# SUPREME COURT.

### EDWARD BRODERICK and another agt. ABISHA SMITH.

If there is any one action more than another pre-eminently the subject of jealous supervision by courts of equity, it is the action for *foreclosure of mortgages.* Where mortgagees have taken advantage in any way of mortgagors, or where there has been a mistake, injurious to the latter, of which the former ought in conscience to have apprised them, a court of equity, so far from lending its assistance to consummate the wrong, will interpose to repair it.

The defendant in this case was relieved from the payment of the *principal* moneys secured by his bond and mortgage, in an action of foreclosure, and the plaintiffs' complaint dismissed under the following circumstances: In September, 1855, the plaintiffs agreed with the defendant to convey to him certain premises on the 2d November, 1855, on receiving from defendant $500, in ad-

Broderick and another agt. Smith.

dition to $1,500, which they had already received from him. It was also agreed that the defendant should give the plaintiffs his bond and mortgage (on the premises,) for $4,000, the balance of the purchase money, payable on the 27th June, 1860, with interest half yearly. The conveyance, and bond and mortgage were to bear date on the 27th June, 1855.

The bond and mortgage contained a clause, that should any default be made in the payment of the interest, or any part thereof, on any day when the same is made payable, and should the same remain unpaid for twenty days, that then the principal sum ($4,000) shall, at the option of the plaintiffs, become payable immediately thereafter. On the 2d of November, 1855, the defendant was ready, and offered to perform his agreement, but the plaintiffs were unable to give an unincumbered title to the premises, by reason of a judgment docketed against them in July previous, and which remained uncancelled, and was a lien on the premises.

The defendant consented to waive his right to rescind the agreement on his part, and was induced by the plaintiffs to fulfil it, by receiving from them a written agreement that they would, within 90 days, cause the judgment to be cancelled, or would deposit the amount of the judgment in the hands of the defendant, until it should be discharged. The first half year's interest became due on the 27th December, 1855 ; the plaintiff procured the judgment to be discharged on the 31st of December, 1855, but no notice of it was given to the defendant, and he had no knowledge of it until the 24th January, 1856 The twenty days for payment of the interest expired on the 17th of January, 1856. On the said 24th of January, the defendant not having paid the interest, was required by plaintiffs' attorneys, without any previous intimation from any person, to pay the principal and interest on his bond and mortgage. The defendant tendered the interest and costs, which was refused by the plaintiffs' attorneys, and was paid by him into court.

SUTHERLAND, J., *dissented, holding,* that outside of the agreements, there was not an act or declaration of the plaintiffs appearing, to mislead the defendant, and estop them from enforcing their rights under the written contracts. There not being in the case a pretence of any surprise, mistake or fraud in the execution of the agreements, out of which the rights of the parties arose, he did not see how the decision of the court at special term could be sustained, without setting aside the agreement which the parties themselves had made, and making a new one for them.

*New - York General Term, February,* 1858.

*Before* DAVIES, CLERKE *and* SUTHERLAND, *Justices.*

APPEAL from an order at special term dismissing the plaintiffs' complaint on a mortgage foreclosure.

A. C. BRADLEY, *for plaintiffs.*

ROBERT EMMET, *for defendant.*

By the court—CLERKE, Justice.  This is an action to fore-olose a mortgage under the following circumstances : in September, 1855, the plaintiffs agreed with the defendant that they would convey certain premises to him on the 2d of November following, on receiving from him five hundred dollars, in addition to fifteen hundred dollars, which they had already received from him.  It was also agreed, that he should give them his bond for four thousand dollars—the remainder of the purchase money—to be secured by a mortgage on the premises, payable on the 27th day of June, 1860, with interest half yearly. The conveyance, and bond and mortgage were to bear date, 27th June, 1855.

The bond and mortgage contained a clause, that should any default be made in the payment of the interest, or any part thereof, on any day when the same is made payable, and should the same remain unpaid for twenty days, that then the principal sum ($4,000) shall, at the option of the plaintiffs, become payable immediately thereafter.  On the 2d of November, 1855, the defendant was ready, and offered to perform the agreement on his part ; but the plaintiffs were unable to give an unincumbered title to the premises by reason of a judgment, which had been docketed against them in July previous ; and which remained uncancelled, and was a lien on the premises.

The defendant consented, at the solicitation of the plaintiffs, to waive his right to rescind the agreement, and receive back the $1,500, and was induced by them to accept a conveyance of the premises, to pay the additional $500, and to give his bond and mortgage for the $4,000, containing the above-mentioned clause.  He, at the same time, received from them a written agreement, that they would, within ninety days, cause the judgment to be cancelled, or would deposit the amount of said judgment in his hands, until it should be discharged.  This arrangement was made on the said 2d day of November, 1855.

The first half year's interest, according to the terms of the bond, became due on the 27th December, 1855 ; the plaintiffs procured the judgment against them to be cancelled on the

31st December, 1855 ; but no notice was given to the defendant of the cancelment, nor had he any knowledge of it, until the 25th January, 1856. The twenty days mentioned in the bond expired on the 17th of January, 1856 ; on the 24th of January, the defendant was required by plaintiffs' attorneys, without any previous intimation from the plaintiffs or any other person, to pay the principal and interest on his bond and mortgage. He, thereupon, caused the interest to the 27th December, 1855, with interest upon that interest to date of tender, to be tendered to the plaintiffs and their attorneys. The tender was refused ; and this action was commenced to foreclose the equity of redemption in the premises.

It will be seen, from this statement, that the defendant allowed the twenty days for payment of interest to elapse, under the impression that the plaintiffs had not procured the judgment, which was a lien on the premises, to be cancelled. When the interest became due on the 27th of December, 1855, the judgment remained uncancelled ; after it was cancelled, no notification of it was given to the defendant; and no demand of interest was made, or the slightest intimation given, that payment of it would be required, according to the strict terms of the bond. Usually, when no stratagem is intended, the obligee calls or sends for his interest. But the plaintiffs allowed the twenty days to elapse without uttering a hint; when they supposed that the default was irrevocable, and that they were entitled to exact prompt payment of the whole principal and interest ; and in failure of this to foreclose the defendant's equity of redemption.

Nothing was more natural, under these circumstances, than for the defendant to suppose that the plaintiffs would not require the payment of the interest ($140) until the lien on his property (for $518 18-100) should be cancelled; and, I think, it was contrary to all equitable dealing for the plaintiffs to take advantage of these circumstances, instead of apprising the defendants of the cancelment, and in due time, before the expiration of the twenty days, claiming the payment of the interest. This was oppressive and unreasonable conduct on the

Broderick and another agt. Smith.

part of the plaintiffs; and one of the principal and benign functions of a court of equity is to afford protection against such conduct, when a suitor attempts to avail himself of it by the instrumentality of a strict legal right. And more especially in a case like the present, when the plaintiffs seek the interposition of a court of equity to enforce a remedy, under circumstances which no court can avoid considering unconscionable, it will refuse to give its aid and countenance for such a purpose.

If there is any one action more than another, pre-eminently the subject of jealous supervision by courts of equity, it is the action now under consideration. All transactions between mortgagor and mortgagee have been always closely scrutinized by them; and when the latter has taken advantage in any way of the former, or where there has been any detriment or hardship resulting from the inequality of their relative positions, and when there has been a mistake, injurious to the former, of which the latter ought, in conscience, to have apprised him, a court of equity so far from lending its assistance to consummate the wrong, will interpose to repair it. This is not an arbitrary interference with the substantial and essential provision of a contract; it is shielding innocent or unfortunate persons against the unscrupulous perversion of them; it is interposing to prevent the employment of legal forms for purposes, which legal forms were never designed to promote. The action to foreclose an equity of redemption, and, indeed, permitting an equity of redemption to exist by courts of equity, is a proof of this. It was instituted for the express purpose of mitigating the hardship of a strict legal right. By the terms of the mortgage, if the day limited should pass without payment of the debt and interest, the estate, as we all know, would absolutely vest in the mortgagee, to the extent to which it is conveyed, free from the claims of the mortgagor. Courts of equity, seeing that it might, perhaps, be forfeited, according to the letter of the instrument, for a sum equivalent to a small portion of its actual value, interposed, and ordained that the mortgagor must have a further opportunity of paying what is

due, and of redeeming the land.   Now, this is sanctioned and regulated by statute ; and the mortgagee so far from being entitled to the ownership of the land, as provided in the contract, is only entitled to have it sold after due notice, and a considerable lapse of time ; and if it bring more than the debt, the mortgagor is entitled to the surplus.   If the court, then, has power to interpose, so as to change the whole character and effect of the instrument, it assuredly has power to modify the effect of a single clause of it, relating to the period limited for the payment of interest.   All that the mortgagee in either case ought to require is, that he should be secured against injury, and that he should derive all the benefit, that natural justice demands.

The judgment of the special term should be affirmed with costs.

SUTHERLAND, Justice, delivered the following dissenting opinion :

I cannot agree with my associates, in their conclusion to affirm the judgment of the special term, in this case.   I think that judgment should be reversed with costs.

On the second day of November, 1855, the plaintiffs conveyed to the defendant, Smith, a certain lot of land in the city of New-York, for the consideration of six thousand dollars, and, at the same time, Smith executed to the plaintiffs his bond and a mortgage on said premises for four thousand dollars of the consideration money.

The bond and mortgage were dated back, the 27th day of June, 1855, for reasons stated in the defendant's answer, which are admitted by the plaintiffs ; and the case stands precisely as if the bond and mortgage had been executed the 27th day of June, 1855, the day they bear date.

The bond was conditioned for the payment of the said sum of four thousand dollars, on the 27th day of June, 1860, with interest thereon, half yearly.   The condition of the bond also contained a special agreement, that in case the interest, or any part thereof, should not be paid on the day when the same

was payable, and should remain unpaid, and in arrear for the space of twenty days, then the principal sum of four thousand dollars, with all arrears of interest thereon, should, at the option of said plaintiffs, become due and payable immediately thereafter, although the period first above mentioned for the payment of the principal sum might not have expired.

On the 27th day of December, 1855, one half year's interest fell due. It was not paid on that day, and remained unpaid for twenty days thereafter; and thus the principal as well as interest was due and payable on the 17th day of January, 1856, according to the special agreement inserted in the condition of the bond.

The mortgage recites the condition of the bond, including the special clause or agreement by which the whole principal was to be due and payable, in case the interest remained due for twenty days; and was given to secure the payment of the bond.

On the 24th day of January, 1856, the plaintiffs' attorneys notified the defendant, that the bond and mortgage had been placed in their hands for collection, and that the same had, by the terms thereof, become due and payable.

This suit was commenced on the 4th day of February, 1856, to foreclose the mortgage, the plaintiffs claiming that the principal as well as interest was due and payable.

On the 25th day of January, 1856, the defendant offered to the plaintiffs' attorneys the half year's interest, which fell due on the 27th day of December, 1855, with interest on the interest, and to stipulate in writing, to pay the costs of the plaintiffs in this action, on their being adjusted. This offer was 'declined.

On the 2d day of November, 1855, the plaintiffs were unable to give an unincumbered title to the premises, by reason of a judgment for $518 18-100, which had been recovered against them in July previous, and which was a lien on the premises. But the defendant, at the request of the plaintiffs, consented to accept, and did accept the deed, and execute the bond and mortgage, on the plaintiffs executing to him a writ-

ten agreement, that they would within ninety days from that time, cause said judgment to be cancelled or removed, so that the same should cease to be a lien, or deposit the amount of the judgment in the hands of the defendant, to be held until such judgment should be discharged.

The judgment was cancelled on the 31st day of December, 1855 ; but the defendant received no notice thereof, nor had he any knowledge of such cancelment, until the 25th day of January, 1856.

On these facts, the defendant having paid into court the interest due on the 27th day of December, and the interest thereon, the judgment of the special term, was, that the complaint should be dismissed.

Now there not being in this case a pretence of any surprise, mistake or fraud in the execution of the papers or agreements, out of which the rights of the parties arise, I do not see how the judgment of the special term can be sustained, without setting aside the agreement which the parties themselves made, and making a new one for them.

The plaintiffs having the right of disposing of their property, the principle is clear, that they had the right of disposing of it on such terms as they thought proper to fix, provided they were not illegal, or so unreasonable that the law would presume them void. (*Roe* agt. *Galliers and others*, 2 *Term Rep.* 133.)

Was the agreement of the defendant, that if the interest remained unpaid for twenty days, then the whole principal sum should be due and payable, illegal, or so unreasonable, that the law pronounced it void ?

It was neither illegal nor unreasonable. Why then should it not be enforced ? If public policy, *not declared either by the common law or by statute,* is a legitimate principle, upon which either courts of law or of equity, can declare contracts between individuals, void, (which I do not admit,) what has public policy to do with the time or the contingency at which or upon which a simple contract debt shall become due or payable ?

It is the policy of law and of the public, that individuals should be left to make their own bargains, and regulate their own affairs, except as restrained by law, or their public duties.

Admitting that there are certain cases, in which a court of equity will relieve from a forfeiture, upon what principle is it said, that the plaintiffs in this action seek to enforce a forfeiture? They seek to foreclose their mortgage because they say it is due. If it is due, it is a common case of foreclosure; and the foreclosure of this mortgage, is no more the enforcement of a forfeiture, than any other case of foreclosure.

Is the mortgage due? It is, if the defendant's express agreement is valid, and is to be enforced. Is the enforcement of it, the enforcement of a forfeiture? If enforced, what will the defendant have to pay? The principal and interest. If not enforced, and the defendant is relieved from his own default, what will he have to pay in 1860, when the mortgage becomes due, without reference to the special interest clause? Principal and interest, and nothing more. How can the enforcement of the payment of a debt, with the legal interest and nothing more, be called the enforcement of a forfeiture? What would the defendant have forfeited, by paying his debt with interest in 1856, rather than in 1860 with interest; the rate of interest being fixed by law; he paying the same rate in either case?

Had money cheapened, and the defendant been able to procure the principal at five per cent., and pay off the mortgage in 1856, he certainly would not have complained, nor called his payment then a forfeiture. As he agreed to pay seven per cent., the lawful interest, how could the payment of the mortgage, with seven per cent., in 1856, be called a forfeiture? I can see no reason for calling this foreclosure the enforcement of a forfeiture. The plaintiffs ask for no more than they bargained for; and the defendant could not have been compelled to pay any more than he agreed to pay.

The parties agreed, that in default of the payment of the interest for a certain number of days, the whole principal should be due and payable sooner than it otherwise would.

Broderick and another agt. Smith.

It was lawful for them so to agree, and if the default happened, if the contingency occurred, the principal thereupon became due and payable by the special agreement of the parties, as it would in 1860, without such special agreement.

What more is there in this case? Was it the plaintiffs' fault, or owing to their laches, that the defendant did not pay the interest within the twenty days? What equity has the defendant, what grounds for relief, growing out of the plaintiffs' agreement to discharge the judgment, which was a lien on the mortgaged premises, executed at the same time the bond and mortgage were executed?

The plaintiffs, by their agreement, agreed to cancel the judgment, or to deposit the amount thereof in the hands of the defendant within ninety days; say, on or before the first day of February, 1856. The defendant, by his bond or agreement, executed at the same time, agreed to pay one half year's interest on the $4,000 to the plaintiffs, on the 27th day of December, 1855.

How can the defendant say that his payment of the interest on the 27th of December, 1855, was dependent on the plaintiffs' discharging or depositing in his hands the amount of the judgment on the first of February, 1856, more than a month after the interest became due? Did the plaintiffs' agreement to discharge the judgment within three months, revoke the defendant's agreement to pay the interest within two months?

The parties must be presumed to have known and understood what they mutually agreed to, and to have intended then to fulfil their respective agreements.

The agreements were in no way dependent upon each other. The defendant's undertaking to pay the interest, was not upon condition that the plaintiffs removed their lien of the judgment.

To permit the defendant to set up in this action, in bar of the plaintiffs' right of foreclosure, the want of notice that the judgment had been cancelled before the twenty days expired, is in effect to make a new contract between the parties, and

by it to take away the plaintiffs' rights, under the agreements actually made by the parties themselves.

The judgment was, in fact, cancelled or removed on the 31st day of December, 1855.

Neither the plaintiffs' written agreement, nor any principle of equity or fair dealing, outside of it, that I can see, called upon the plaintiffs to notify the defendant that the judgment had been cancelled, as a condition of their right to exact from the defendant the fulfilment of his agreement. The defendant had no right to expect, or to wait for such notice before he paid the interest. If he had gone and paid the interest at any time within the twenty days, it would have been natural for him to have asked whether the judgment had been cancelled, and he then probably would have been informed that it had.

If the plaintiffs had not removed the lien of the judgment, or deposited the amount thereof with the defendant, within the ninety days as agreed, then the amount of the same should have been deducted from the mortgage, but I cannot see how a breach of the plaintiffs' agreement, on the first of February, could have justified a breach of the defendant's agreement on the 27th of December previous, and the continuous default of the defendant, for twenty days thereafter.

Outside of the agreement, I do not find an act or a declaration of the plaintiffs to mislead the defendant, and estop them from enforcing their rights under the written contracts.

I think, therefore, the judgment of the special term should be reversed with costs.

Judgment affirmed.