(109 App. Div. 433; 111 App. Div. 912)

## ARNOT v. UNION SALT CO.

(Supreme Court, Appellate Division, Third Department.   November 15, 1905.)

**1. MORTGAGES—RIGHT TO FORECLOSE—DEFAULT—INTEREST.**

A mortgage given to secure bonds falling due at different dates pro-
vided that, on default in payment of interest on said bonds continuing
for six months, the holder of a majority might elect to have the whole
of the principal declared due. *Held,* that demand and refusal were not
necessary to constitute a default, and, it appearing that a fund sufficient
to meet the interest due was not at the place of payment, and that
demand was withheld at the request of the obligees, a default existed.

**2. SAME.**

On default the holder of the bonds had two distinct rights—First, the
collection of the interest by action or foreclosure; second, the com-
mencement of the six months' period, after which he might call for
the principal; and a waiver of the right to bring action was not a waiver
of the second right.

Appeal from Trial Term.

Proceedings by Mathias H. Arnot against the Union Salt Company
to foreclose a mortgage. From a judgment for plaintiff, defendant ap-
peals. Affirmed.

This plaintiff is the trustee in a mortgage executed by the defendant
to secure an issue of 200 bonds of the par value of $500 each. These bonds
became due, $10,000 thereof upon July 1, 1907, $5,000 thereof upon July 1,
1909, 1911, 1913, 1915, 1917, 1919, and $60,000 upon July 1, 1932. These
bonds bore interest at five per cent., and had attached thereto interest coupons,
each for the sum of $12.50, payable January 1st and July 1st in each year.
The mortgage provided that in case of default in payment of interest upon
said bonds, or any of them, and a continuance of such default for six months,
upon the election and request of one-half in value of the then outstanding
bonds, the whole of the principal of the bonds should be declared due by
the trustee, and the said trustee was in such case given authority to take
possession of the premises included in the mortgage, and bring an action to
foreclose the same. This plaintiff individually became the owner of $57,500
of these bonds. The Chemung Canal Trust Company, of which he was
the president, had discounted a note of the company for $8,000, for which it
held $10,000 in value of the said bonds. Upon June 27, 1904, there was a
meeting of the directors of the defendant at Watkins. These directors con-
sisted of E. P. S. Wright, the president of the company, this plaintiff, who
was vice president, P. Halsey Hawes, who was the treasurer, E. E. Buchanan
and George S. Coon. All the directors were present at this meeting except
the plaintiff. It was agreed by the directors present at the meeting that,
inasmuch as all the available funds of the defendant were needed for run-
ning expenses, it would be better for the directors to withhold presentation
of their interest coupons due July 1, 1904, until some later time. The exact
time at which the company would be able to pay these coupons was not
fixed, but it was stated that they expected to be able to pay them in October
or November of that year. Mr. Buchanan was to see Mr. Arnot, and, if
possible, get his consent to such an arrangement. Upon July 1st, about noon
of that day, Mr. Buchanan saw Mr. Arnot, and in substance told him what
had been talked at the directors' meeting, and as to the proposition made
as to the directors withholding their coupons, and that Mr. Wright and
Mr. Hawes wanted his permission to delay the payment of the coupons.
Mr. Arnot talked about the condition of the affairs, and what was done at
the meeting, and stated that they had failed to keep their promises, and
he did not think they would keep this promise. That was all that was
said about the coupons. After that interview, Mr. Buchanan telephoned to
Mr. Hawes, the treasurer, as he swears, that "Mr. Arnot would not give
his consent; but I thought if he got money in, there was a note for an air

compressor that had been sold, as I remember, for $1,200, that they expected to have paid in a short time, and there was a load of salt that they expected money for in a short time, amounting to 12 or 13 hundred dollars, and Mr. Hawes said if they could get this money in, they could pay the coupons in a few days after they were due, and I told Mr. Hawes over the 'phone that I thought Mr. Arnot would do nothing if he got this money together, and made payments as soon as possible." Nothing further transpired until September or about the 1st of October, the directors were all together at Elmira, when Mr. Arnot was present. It appeared that about $200 worth of coupons had been presented and paid upon or about the 1st of July. At that meeting in October Mr. Arnot stated that he noticed that some coupons had been paid July 1st, and asked why it was; "that he thought we were all to wait for our interest, or words to that effect." The president, Mr. Wright, testified that he then explained to Mr. Arnot that it had been decided at the June meeting that "it would be better to pay the few out-standing coupons, in order to prevent any talk from outsiders, and that only the directors were to withhold their presentation; that amounted to so little it was hardly worth while to hold them out, and with that explanation he seemed satisfied." Upon December 6, 1904, E. J. Dunn, the treasurer of the Chemung Canal Trust Company and the private secretary of Mr. Arnot, wrote to the defendant this letter: "Gentlemen: In some manner $200 worth of coupons came in the time they were due, and were charged to your account. There has been a check presented by the N. C. R. R. Co. for $275.90. As the charge of the coupons left your account not good for this check, we would ask that you kindly remit at once, so that it may be taken care of." In response to that the defendant, through its treasurer, wrote that the deficiency would be made up presently. Upon January 4, 1905, Mr. Arnot wrote to Mr. Hawes, the president of the company, the following letter:

"Mr. P. H. Hawes, Watkins, N. Y.—Dear Sir: I am holding coupons cut from Union Salt Co., bonds which fell due January 1st, '05, also July 1st, '04, and they are at the present time unpaid. I should like to know what provision is being made to pay them. I am informed that Mr. Wright has sold his stock. Do you know whether this is a fact? Have you also parted with your stock or with any part of your holdings? An early reply will greatly oblige,

"Yours truly,                                        M. H. Arnot."

Upon January 5th Mr. Hawes replied to this letter, stating that he was advised that a substantial payment would be made upon the note held by the Chemung Canal Trust Company when it next became due, and the interest on the bonds would be paid. "Just when or how this will be brought about I do not know." The interest coupons attached to said bonds were each for the sum of $12.50, and were made payable to bearer at Chemung Canal Bank in the city of Elmira. The Chemung Canal Bank was thereafter merged in the Chemung Canal Trust Company, of which the plaintiff was at all times president. Upon July 1, 1904, the defendant had to its credit in the Chemung Canal Trust Company the sum of $539.75. At no time since that date has it had a greater sum to its credit in said trust company. Upon June 27, 1904, Mr. Dunn, the private secretary of Mr. Arnot and the treas-urer of the Chemung Canal Trust Company, placed upon the desk in the receiving teller's cage in said company the said coupons falling due upon July 1st, cut from the bonds owned by Mr. Arnot. Upon that day Mr. Arnot was credited upon his account with the trust company with the full amount of these interest coupons. Thereafter, and upon the 9th day of July, Mr. Arnot gave to the said trust company his check for the amount of the said coupons thus credited to him. This action was commenced upon the 20th day of January, 1905. Upon that day, and prior to the commencement of the action, Mr. Arnot was tendered by the president of the defendant the sum of $4,850, and thereafter under an order of the court the defendant paid into court the sum of $5,026; both sums being in excess of the amount due for interest upon the bonds held by Mr. Arnot, and the latter amount being in excess of the amount due for interest upon said bonds and $100, costs of the action. Upon these facts the trial court held that upon July 1st the interest coupons upon the bonds of Mr. Arnot were duly presented for pay-

ment at the Chemung Canal Bank and payment was refused; that some time after January 1st Mr. Arnot personally made the request to himself as trustee to declare the principal sum of said mortgage due by reason of the continuance of a default in payment of interest coupons for six months; that thereupon said trustee so declared the principal sum upon said bonds and mortgage as due, and was entitled to bring and maintain this action, and judgment of foreclosure was ordered. From the judgment entered upon the decision of the trial court this appeal has been taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Philo P. Safford (O. P. Hurd, of counsel), for appellant.

Reynolds, Stanchfield & Collin, for respondents.

SMITH, J. · We are unable to find in the evidence any intention on the part of Arnot to waive the benefit of the acceleration clause in this mortgage. If to avail himself thereof these coupons must have been presented, there is evidence from which the court might well have found that the presentation of Arnot's coupons for payment was withdrawn. Upon the 1st day of July defendant had on deposit with the Chemung Canal Trust Company $539. These coupons were each for the sum of $12.50. If these coupons had been presented and their payment insisted upon, it was the duty of the bank to have paid them so far as the money on hand would have done so. That none of these coupons were at that time paid; that they were afterwards taken back, and put among Mr. Arnot's securities; that upon a meeting on the 1st of October he stated that he thought they were all to wait for their interest—these facts, in view of the request by the other directors to postpone the presentation of the coupons, although not assented to at the time by Arnot, would seem to indicate that the payment of the coupons was not insisted upon on July 1st, and their presentment for payment was withdrawn.

The right to elect that the principal sum of these bonds should be deemed due was by the mortgage made dependent upon a continued default in payment of the interest for six months. A demand and refusal are not necessary to constitute a default. They are only evidence of a default. The default is the failure to pay the contract obligation. In a mortgage to an individual mortgagee, he may insist that the payment of the principal has been accelerated by continued default without demand. Dwight v. Webster, 32 Barb. 47; Trenor v. Le Count, 84 Hun, 426, 32 N. Y. Supp. 412. If payable at a given place, no demand is necessary. If defendant, however, shows that he was ready at the place of payment, he will be relieved of interest and costs. Haxton v. Bishop, 3 Wend. 13. But these coupons were not even payable on demand. It affirmatively appears that funds sufficient to pay them were not at the place of payment, and a sufficient fund has not been there since that date, and the demand for payment was withheld at the request of defendant and for its benefit. Defendant's default or failure to pay existed notwithstanding plaintiff forbore to insist upon payment, to the inconvenience of defendant.

Upon this default two rights accrued to plaintiff—first, to collect his interest either by action at law or foreclosure; second, the commencement of the six months period, after which plaintiff might elect

to call the full principal of the bonds due. And right here the defendant fails to distinguish between these two rights, and insists that a waiver of one is legally a waiver of the other, and that the forbearance to press the collection of the interest is also a consent that the six months acceleration period be postponed. But there is no such legal sequence. A mortgagee might be very willing to forbear to collect his interest for three or four months, and yet be wholly unwilling that if the mortgagor should be unable to pay for six months he should be deprived of the second right which attached to the mortgagor's default, to wit, the right to declare the principal sum to be presently payable. It may be that an agreement to wait for the interest for a period beyond the six months might be deemed an agreement waiving the benefit of the acceleration clause of the mortgage for the time being. Mr. Wright, the president of the defendant, swears that at the meeting in June, at which the directors were asked to postpone the presentment of their interest coupons, it was talked that the defendant would be able to pay those coupons in October or November. Mr. Buchanan swears that upon telling Mr. Arnot of what occurred at this meeting his reply was, in substance, that they had not lived up to their promises heretofore, and he did not believe they would live up to this promise. The fair inference from the testimony is that the promise to which he was referring was the promise to pay the coupons in October or November. Mr. Arnot did not consent to this arrangement. Mr. Buchanan informed Mr. Hawes of his refusal to consent, but stated that if the interest was paid within a short time he thought that no trouble would be made. At the most, the inference would seem to be that the consequences of a default were to be deemed waived on condition that the coupons were paid in October or November. But this condition was not fulfilled. The directors of the defendant were warned of Mr. Arnot's attitude and of his refusal to acquiesce in the arrangement, and were put upon their guard that he agreed to waive nothing, and that they had nothing to expect from him except as he might from day to day neglect to insist upon his interest. Not an act, not a word, from him gave to the defendant's directors any right to believe that if they failed to pay that interest in October or November, as was assured to him, that he would waive any right which he had as the holder of a majority of the bond issue secured by the mortgage, of which he was trustee.

The case of Ver Planck v. Godfrey, reported in 42 App. Div. 16, 58 N. Y. Supp. 784, holds no other rule. In that case the payment of the principal of a mortgage was sought to be accelerated by the neglect of the mortgagor to pay a tax. We are not ready to agree to the rule stated as to the effect as a waiver of the letter written by the mortgagee's attorney. After having declared election to consider the full amount due, an expression of a willingness to give opportunity to the mortgagor to pay before action brought can hardly, even by a strained construction, be held to be a waiver of the right to declare the full amount due. The case was similar in its nature to the case of Noyes v. Anderson, 124 N. Y. 175, 26 N. E. 316, 21 Am. St. Rep. 657. In both of those cases the right to accelerate the payment of the principal of a mortgage was for nonpayment of a tax, and was treated as a

forfeiture. In Noyes v. Anderson, however, Judge Bradley, in writing for the court, says:

"The stipulation of the plaintiff's agreement essentially differs in its nature and object from a provision in a mortgage to the effect that the principal sum shall become due on a specified default in the payment of interest, as provided by it. In the latter case provision is so made for the time when the principal sum may become due, and that time is regulated by an event which may or may not occur, so far as it is dependent upon the default of the mortgagor. The consequence so produced is not deemed a forfeiture. The result is maturity of the principal debt at the time, not definitely fixed, when the mortgage is made, but specifically stipulated for in that instrument. And in such case the court, as a rule, will not grant relief to the mortgagor from the effect of his default, when nothing is done on the part of the mortgagee to render it unconscionable for him to avail himself of it."

In Levey v. Union Print Works, reported in 12 N. Y. Supp. 153, the mortgage in one respect differs from the mortgage in the case at bar in that it provides that the principal amount shall be deemed due upon a default in the payment of interest, if such default continues six months after "payment shall have been duly demanded." The mortgage in the case cited thus made a demand and a refusal of payment a condition precedent to the running of the six months default. In that case the demand was concealed from the officers of the mortgagor, and was not made at the office of the company, but was made of the treasurer, a son of the trustee and a brother of the holder of the bonds. It was still held in that case that it would have been unconscionable that the mortgagor should have been held to have been in default, after the concealment of the fact of the demand made under the circumstances which there existed. In the case at bar there was no concealment of the default and of the commencement of the running of the six months' period. It was known to all of defendant's officers. If misled, they have been misled by their unwarranted assumption that plaintiff by yielding one right was yielding all. The case of Broderick v. Smith, in 26 Barb., at page 539, rested upon an entirely different principle, was decided by a divided court, and in Ferris v. Ferris, 28 Barb. 29, Judge Ingraham, in writing for the court, declines to approve of the decision.

Our conclusion is that presentment of the coupons for payment was not necessary to constitute a default, and that mere forbearance to insist upon payment of such interest had no effect to postpone the commencement of the six months acceleration period stipulated in the mortgage. Plaintiff has not intentionally waived his right thereunder, nor has he done any act from which defendant might lawfully infer that such was his intention. The judgment should therefore be affirmed, with costs.