HOYT POST, ADM'R v. JOHNSON C. SPRINGSTED AND CARRIE
B. TAYLOR.

*Assignment of mortgage under power of attorney—Tender.*

A power of attorney which purports to specify the power conferred does
not give the attorney the right to assign a mortgage held by his prin-
cipal unless it expressly states that he may do so ; and he certainly
cannot assign it to himself.

A tender of the amount due on a mortgage must be open, fair and
reasonable, and made at the right time and place and to the proper
person ; and the refusal of such a tender must be without justifiable
excuse to warrant the forfeiture of the mortgage security.

Where the defense to the foreclosure of a mortgage depends on new
matter by way of avoidance the defendant must allege it circum-
stantially and prove it as alleged.

Where a mortgage permits the mortgager to make payment before the
debt falls due, at his option, he must distinctly and affirmatively
elect to do so, and, if he relies upon such election in defending against
a foreclosure, he must not only prove it but allege it in his answer.

Courts will hesitate to enforce the forfeiture of mortgage security for
the refusal of a tender when its apparent purpose is to force the
mortgagee to accept it at once and with no opportunity to determine
whether it is the proper amount.

Appeal from Wayne.   Submitted June 21.   Decided
October 14.

FORECLOSURE.   Defendants appeal.   Affirmed.

*Henry A. Harmon* and *Hoyt Post* for complainant.

*Henry M. Cheever* for defendants.

GRAVES, C. J.   The case is sufficiently outlined by the
opinion of the circuit judge.*

---

* The bill in this case is filed to obtain the foreclosure of a mortgage
made by the defendant Springsted to the late Johanna Walsh, now
deceased, of whose estate the complainant is administrator.   Johanna
Walsh was a feeble old woman of about 80 years of age.   From the tes-
timony of her two physicians, Drs. Farrand and Foster, it is doubtful

*First.* The title to the mortgage never passed out of decedent. The power of attorney to James Walsh gave no authority to assign it to anybody and certainly not to himself, and the evidence of the assignees is conclusive that the assignment was not meant to convey any real interest.

*Second.* To be effectual a tender must be made at the right time and place and to the proper person, and in case the defence based on it depends as it does here on new matter by way of avoidance it is necessary that the defendant

whether she had sufficient mental capacity to undertake or attend to business matters of any importance. While in this condition, which continued until the time of her decease, the defendant Springsted purchased from her, on the 9th day of April, 1877, the premises described in the mortgage sought to be foreclosed, the mortgage having been given to secure part of the purchase price. The sale to Springsted was made through an agent of Mrs. Walsh, who received the purchase price, except ing the portion secured by said mortgage, but did not pay over to Mrs. Walsh the amount received, and although efforts were made by the sons of Mrs. Walsh, James and William, to collect the amount, a considerable portion remained unpaid.

The sons, believing their mother had been unfairly dealt with, and fearing she would squander the remainder of her property, including the mortgage in question, or that designing parties might take advantage of her feeble condition, induced her to make her son James a power of attorney, dated May 29th, 1877. The primary purpose of this power on their part was to enable the attorney to so place the title to her property that she could not convey, and with that intention, James, acting appar ently under the impression that this power of attorney, the act on the twenty-ninth day of May, 1877, made an assignment of the Springsted mortgage to himself, his brother William, and Mrs. Catharine Walsh, the widow and guardian of the children of a deceased father. And it would seem that neither of these assignees claimed, under the power of attorney and assignment, to own the mortgage in opposition to the rights of Mrs. Johanna Walsh to any moneys that might be received thereon. After they had learned of the conveyance by Mrs. Johanna Walsh, and up to the time of the tender by defendant Springsted, referred to below, they had consulted among themselves as to whether they had best proceed in her behalf and have the deed made by Mrs. Walsh to Springsted set aside, because of her feeble state of mind when it was made, but nothing had been decided upon at the time of the alleged tender. On the 5th day of April, 1878, in response to a letter from defendant Springsted to James Walsh, the latter wrote to Springsted that he, James, was merely the recorded attorney in fact of Mrs. Walsh, and he did not think he was empowered to execute a release of the mortgage as he understood the facts.

The power of attorney from Mrs. Walsh to her son James was, in form, a power to sell and convey, by deed, all or any part of the realty belonging to her, and also to borrow upon mortgage of her lands any moneys for her use which, in his judgment, he should deem necessary. It is sufficient, without reviewing its terms at length, to say it did not authorize James to assign the Springsted mortgage, and there is no diffi culty in holding that James, William and Catharine Walsh derived no title to the mortgage under the assignment made by James.

allege it circumstantially and establish his allegations by
evidence.

No tender was ever made to decedent in person. That is
certain. But defendant urges that he applied to her on the
subject and was then instructed by her that James was
authorized to act and was the proper person to deal with,
and that he, the defendant, acted on that advice and ten-
dered the whole mortgage money to James, who refused it,
and that in view of her conduct in the matter this tender
was the same in effect as one made directly to herself.

---

In April or May, 1878, and apparently after the receipt of the letter
written to him by James, the mortgagor, Springsted, having heard
that the sons of Mrs. Walsh were considering whether proceedings
should not be commenced to set aside the conveyance to him, sent his
son and, subsequently, his wife to Johanna Walsh, and these persons sub-
stantially agree in their testimony that the old lady, in response to a
statement by them to her, that Springsted wanted to pay the mortgage
and wished to know where it was, said that she had assigned everything
over to James, and he was the one to settle the business with, Mrs.
Springsted adding the statement that Mrs. Walsh said that she had
given the mortgage to James.

On the 3d of June following, Springsted took his attorney and a
stenographer in a carriage and drove to the house of Mrs. Catharine
Walsh, and to the place of business of William Walsh, and there, in
form, tendered to them the amount due upon the mortgage, and after
offering the money, requested them to sign a discharge. They both
said to him that they could not accept the money, and referred them
to James Walsh. On the same day Springsted went to Ovid, where
James was then employed, and there, in form, tendered him the amount
due.

Now, unless the statement made by Mrs. Johanna Walsh to young
Springsted and his mother, and communicated by them to the father,
estopped Mrs. Walsh and her administrator from denying that she had
assigned the mortgage to James, then the tender to James did not oper-
ate to release the lien of the mortgage. But there is no principle of the
law of estoppel which prevented Mrs. Walsh or her administrator, after
her decease, from alleging that in fact James had no title to the mort-
gage which authorized him to receive the debt. Springsted, although he
may have been misled into making an ineffectual tender, is placed in no
worse situation than he was in before Mrs. Walsh made the statements
referred to. It was claimed upon the argument that the statements of
Mrs. Walsh, in themselves, conferred an authority upon James to receive
the money due upon the mortgage, and therefore a tender could be made
to him. But it needs no argument to show that, inasmuch as no other
authority for James to receive the money was shown, and these state-
ments were not communicated to James, the latter was justified in refus-
ing the money which was tendered by defendant Springsted. This view
of the case renders it unnecessary to discuss the good faith of the tenders
made, or the circumstances attending the offer to pay.

It is, therefore, now by the court, declared and adjudged that the com-
plainant is entitled to a decree of foreclosure as prayed in the bill of com-
plaint, and such decree will accordingly be entered, when settled accord-
ing to the practice in such cases.

JOHN J. SPEED, Circuit Judge.

It is needful to refer to a special aspect of the case. Now only a small portion of the mortgage debt had really fallen due; but it was provided in the mortgage that the mortgagor might pay in advance of the specified dates at his option. Hence, he had a right to render the whole amount due and payable at once; but it was a right to be distinctly and affirmatively exercised, and the benefit could not be fixed and assured except upon an election unequivocally disclosed, and binding on both parties. Was such an election made? The answer contains no allegation of it; and conceding for the present that what evidence was given to show an offer to pay the whole debt was conducive to prove an election that the whole should be immediately due and payable, still there was no basis for it in the pleading. Moreover there was no allegation to the effect that James was so situated that he could bind the mortgagee to accept the whole; or that the mortgagor was so circumstanced that he could recur to James as the other party to be dealt with to effect an election to render it all immediately payable.

But suppose this difficulty surmounted; it may well be asked, were the circumstances disclosed sufficient to enable the defendant to set up a defence of tender? Before a mortgagor can invoke the authority of equity to hold him exonerated by a tender he must show a strong and clear case and satisfy the court that his efforts to make payment were open, fair and reasonable, and that the refusal was without justifiable excuse. It would be greatly at variance with the principles and aims of a court of conscience to inflict the loss of a mortgage as a consequence of the refusal of its owner to forego all deliberation and instantly accept a sudden offer of payment when it is the primary object not to satisfy the mortgage but to drive the mortgagee to forego a fair consideration of the question which the facts suggest whether he will abide by the mortgage, or on the contrary will seek to have the transaction in which it originated set aside for fraud. To yield approval to such practice would be giving to mere *finesse* an advantage over the

substantial justice which it is the province and the duty of a court of equity to administer. *Wiltshire v. Smith* 3 Atk. 89; *Potts v. Plaisted* 30 Mich. 149; *Proctor v. Robinson* 35 Mich. 265; *Waldron v. Murphy* 40 Mich. 668; *Canfield v. Conkling* 41 Mich. 371; *Parks v. Allen* 42 Mich. 482. The case supposed is so nearly parallel to the real one that the same principle applies to both. There is some evidence favoring the notion that defendant finally waived the supposed tender within the principle of *Fry v. Russell* 35 Mich. 229, but the question is not considered.

The decree is right and is affirmed with costs.

The other Justices concurred.