UNION MUT. LIFE INS. CO. *v.* UNION MILLS PLASTER CO. *et al.*

*(Circuit Court, W. D. Michigan, S. D. January 29, 1889.)*

1. MORTGAGES—FORECLOSURE—ON DEFAULT OF INSTALLMENT.

When a mortgage securing several installments stipulates that if one of these remains 60 days overdue the whole amount shall become due and payable at the mortgagee's election, the mortgagee must, if it knows that the mortgagor has the installment ready at its usual place of payment, and requires payment at the place stipulated in the mortgage, so notify the mortgagor, and, if it does not do so, and its agent at the usual place of payment refuses to receive payment except on certain conditions, it waives the right to payment elsewhere, and cannot, in default thereof, treat the whole debt as due.

2. SAME.

Though the mortgagee's agent unjustifiably refused to accept an installment due unless the mortgagor would agree to make repairs on the premises, yet, since there is no bad faith shown, and the mortgagee may have thought that it had a right to require the agreement, the lien of the mortgage will not be deemed divested as to that installment.

3. SAME—RECEIVERS—WASTE.

Mere disuse of a manufacturing plant under an agreement with other manufacturers to restrict production, though attended with the decay and dilapidation inseparable from disuse, is not such destruction or waste as to entitle the mortgagee to ask for a receiver.

4. SAME—FEDERAL COURTS—FOLLOWING STATE PRACTICE.

How. St. Mich. § 7847, taking from the mortgagee the right to possession until foreclosure sale is confirmed, and the holding in *Wagar* v. *Stone*, 36 Mich. 364, that this statute secures to the mortgagor the rents and profits pending foreclosure, constitute a rule governing substantial rights, and not mere matters of practice, and deprive the federal courts sitting in that state of the power to appoint a receiver of the rents and profits on the ground that the security is inadequate.

5. SAME—APPOINTMENT ON PLEADINGS.

A receiver will not be appointed on the coming in of the answer, when such appointment is•the principal question in the case, and is required, if at all, as a means for enforcing the decree, and not for a merely ancillary purpose connected with the temporary incidents of the suit, but action will be deferred till the hearing.

In Equity. On motion for appointment of receiver.

*Butterfield & Keeney*, for complainant.

*Smiley & Earle*, for defendant company.

SEVERENS, J. The bill in this cause was filed for the purpose of foreclosing a mortgage given to Daniel Sharpe, the complainant's assignor, on the 11th day of August, 1880, by Brosnan and McKee, to secure the payment of the sum of $45,000, made payable in 12 installments of $3,750 each, on the 1st day of June in each year thereafter, with annual interest at $4\frac{1}{2}$ per cent. on the whole sum from time to time, unpaid, according to the tenor of a certain bond, of even date with the mortgage, from Brosnan and McKee to Sharpe. The mortgage was given to secure the purchase price for the plaster-mills property at Grand Rapids, and covered the whole plant. The Union Mills Plaster Company, having become incorporated, purchased the mortgaged property of Brosnan and McKee, and ·by the terms of its purchase assumed and agreed to pay the mortgage debt to the complainant. The first two installments of principal, and the annual interest on the whole sum for the first and second years, were paid. On the maturing of the third installment, a further agreement was entered into between the complainant and Brosnan and the plaster company, whereby the payment of it was deferred, and it was put at the foot of the other installments, to follow them as an annual installment; and the rate of interest was raised to 6 per cent., but it was to be, and was, until 1888, in fact paid annually as before. Upon the same arrangement, the installments of principal due in 1884, 1885, 1886, and 1887 were turned behind the first deferred payment. By the terms of the obligations they were payable at the complainant's office in Boston, but in fact the payments were never made there, and generally, if not always, they were made at or through a bank at Grand Rapids. Complainant's incorporation was under the laws of Maine, and its home office was at Portland, but it is alleged that it had also an office at Boston. It was stipulated in the mortgage that if any portion of the mortgage debt should remain unpaid for the period of 60 days

after it should become due, the whole debt should, at the election of the mortgagee, become immediately due and payable. And it was expressly provided in the agreement for deferring payments that it should not prejudice any right of the mortgagee further than should be needful to give that agreement effect. Brosnan was a friend, and seems to have had the confidence, of De Witt, the president, and was, so far as the present business is concerned, managing officer of the complainant. The agreements for deferring payments, above recited, were probably induced by this favor towards Brosnan, who, when the plaster company was formed, became a prominent factor in it, but died before the present controversy arose. The installment and the annual interest due on June 1, 1888, not being paid at maturity, correspondence ensued between the representatives of the plaster company and Mr. De Witt, having in contemplation a further agreement about the payment of what was due, and the management and preservation of the mortgaged property; but, no agreement having been arrived at, on the last of the 60 days after the payment was due, the plaster company telegraphed the complainant, asking it to designate some bank at Grand Rapids to receive payment of the amount due. The answer to this referred the matter to their attorney at the latter place, who, on being applied to, refused to receive the money at Grand Rapids, except it should be accompanied by an agreement to put the buildings and the machinery on the mortgaged lands in a better state of repair and preservation. The plaster company was willing to stipulate to a qualified limit in that direction, but would not agree to the terms in that regard required by the complainant. The day wore off without a coming to terms, and no tender was made to the attorney for complainant, except that the agent of the plaster company, to whose credit the money had for this purpose been deposited in a national bank at Grand Rapids, offered to give his check for the amount due. This was refused upon the general ground above stated, and because the attorneys professed to be bound to follow strictly their instructions, which were to insist upon the condition. On the following day the whole amount was tendered to and refused by the attorneys, and the plaster company thereupon sent a draft for the same amount by mail to the complainant, at the same time telegraphing advice of its transmission. This draft was returned by the complainant, the grounds of its refusal to receive it not being stated.

It also appears that the complainant paid the taxes on the mortgaged property for the year 1887, after they had been returned delinquent, and prior to the filing of the present bill. This it was authorized to do by the express provision of the statutes of Michigan, which gives the mortgagee the right to tack a payment so made to his debt, and extends the mortgage security to it. How. Ann. St. § 1137. And I am of opinion that the mortgagee may do this at any time after the mortgagor has made default, and suffered the property to be returned for the unpaid taxes. On the 12th day of November, 1888, the present bill was filed to foreclose the mortgage, the complainant declaring therein its election to treat the whole debt as due, and praying relief accordingly. It is

alleged in the bill that the mortgaged property is, from disuse and wanton neglect of repair, going to dilapidation and ruin; that the buildings and machinery are suffering depreciation in value from want of proper care, and from the same cause the more movable property is being stolen or lost. It is also alleged that the affairs of the corporation have been and are corruptly mismanaged; that its debts are suffered to accumulate, while its assets are appropriated by its officers and agents in charge to their own private use; and a detail of great fullness is exhibited, which, if truly alleged, would illustrate in a striking way the facilities which the fabric and machinery of incorporation afford to those disposed to fraudulent practices. It is alleged, in substance, that the corporation is kept continually on the verge of insolvency by the fraudulent appropriation of its assets by those having charge of them. To this it is added that, in consequence of the depreciation of the value of the mortgaged property, and the crippled condition of the corporation from the mismanagement of its officers, the complainant's security is greatly impaired, and is altogether inadequate to protect the debt. Therefore it is prayed that a receiver may be appointed to take charge of the assets and business of the corporation, under the direction of the court, to take the rents and profits, and that they may be applied to the mortgage debt, etc. The present motion is for the appointment of such receiver, and affidavits are filed in support of the bill. In response to the order to show cause, the defendants, the plaster company, and the officers and stockholders complained of, have answered, and filed affidavits. They deny the allegations of the bill, on the basis of which a receiver is prayed. In the answer the defendants offer to pay the installment of principal and the annual interest, which were tendered before the filing of the bill. The evidence adduced on this hearing was quite voluminous, and all the material parts of it have been attentively considered. The conclusions of fact drawn by the court therefrom will be stated so far as such conclusions form the ground of decision.

That it is competent for parties to stipulate that on default in the payment of an installment the whole may become due at the election of the payee, is well established, and courts of equity will give such stipulations effect when they have been fairly made, and the right of election fairly exercised. *Noonan* v. *Lee*, 2 Black, 499; *Olcott* v. *Bynum*, 17 Wall. 62. It will not, however, aid in the enforcement of such right where the conduct of the payee indicates artfulness, trickery, or stratagem in bringing on the technical conditions upon which he exercises the right. His purpose must have been open and honest, and advantage cannot be taken of any misleading produced by his own action, or (what is the same thing) the reasonable implication contained in it. *Noyes* v. *Clark*, 7 Paige, 179; *Broderick* v. *Smith*, 26 Barb. 539. In the present case, while I do not find that there was a deliberate purpose to hold off the payment which was due in June, 1888, by stratagem, until the 60 days should have elapsed, still I am of the opinion that when the complainant was notified that the defendants were ready to pay the money at the place where it had usually been paid, and knew that the money

was in readiness, it should have signified its purpose to demand the exact fulfillment of the contract as to the place of payment, if it intended to insist upon it, and that its conduct in refusing to receive payment except upon certain conditions was an implied waiver of its right to have the payment made in Boston, which it signified no purpose to require. It is very probable that if the defendants had understood that that condition was to be exacted, they would have taken steps to have payment tendered at Boston on the last day, and with the facilities of the present day for transmitting funds there would probably have been no serious difficulty in accomplishing it. The almost fatal consequences to the defendant company of bringing this whole debt upon its hands for payment would doubtless have stimulated to great effort to avoid it. It is therefore held that upon the facts disclosed it would be inequitable to permit the right to elect the whole debt due to be exercised.

Another branch of the subject remains for consideration. A tender of the whole sum which was in fact due having been made, is the mortgage security as to the sum so tendered lost by the refusal to accept? It is the rule undoubtedly that a tender discharges the security. *Moynahan* v. *Moore*, 9 Mich. 9; *Caruthers* v. *Humphrey*, 12 Mich. 270; *Potts* v. *Plaisted*, 30 Mich. 149. But to produce such serious and heavy consequence the refusal must have been unqualified, and unaccompanied by any *bona fide* claim of right, which was supposed by the party to justify his refusal. The claim of right may have been one that could not be supported as matter of law; still, if it was believed in, and was not wantonly put forward as a cover to a wrong purpose, it is sufficient to prevent the forfeiture of the security. So here, while it is clear enough that the complainant had no right to make it a condition of receiving payment, that the defendant should enter into stipulations about making repairs on the mortgaged property, still it may have been that it thought it had such right, and I do not find such evidence of its bad faith in this regard as to justify a declaration of forfeiture. *Waldron* v. *Murphy*, 40 Mich. 668; *Post* v. *Springsted*, 49 Mich. 91, 13 N. W. Rep: 370. It results from these considerations that the complainant's bill is well filed for the foreclosing of the mortgage in respect of the installment of principal and the annual interest and the taxes for 1887. A question about costs may arise at the hearing.

It is shown that the plaster-works covered by the mortgage have not been operated for two or three years past, the defendant company having entered into a combination with other plaster companies at Grand Rapids to restrict production, and keep the price of the product up to the rate agreed upon, and arranged with another member of the combination for the production of the Union Mills Plaster Company's proportion, as allotted by the combination. The reason for this arrangement with the other company is said to be that the latter has such facilities that it can produce the plaster at a cheaper cost, and it is claimed that it is better for the defendant to pay what it does for thus furnishing its proportion, than to furnish the plaster from its own mills. The defendant's mills and works have therefore remained idle, and have suffered from the decay

and dilapidation incident to all such works when disused.    The *prima facie* showing of gross neglect and despoiling of the property, made in support of the motion, is fairly refuted by the answer of the defendants and the affidavits of others supporting the answer, and the result of all the evidence is that no such destruction or waste of the property as would on that account warrant the appointment of a receiver is shown. To justify such an appointment the waste must be serious, and the danger of destruction or impairment of the security imminent.    *Pullan* v. *Railroad Co.*, 4 Biss. 47; *Morrison* v. *Buckner*, Hemp. 442; *Beverley* v. *Brooke*, 4 Grat. 187.    In this case I am not convinced that the waste is other or more serious than would ordinarily occur to such property from mere disuse.

But it is claimed by the complainant—and, if the conduct which has thus far characterized the management of the affairs of the defendant company is to be continued, I think with strong reason—that the security is inadequate.    While I am satisfied that some of the complainant's witnesses have greatly underrated the value of the mortgaged property, still the impression left upon my mind is that it is quite doubtful whether in the present condition of affairs the property is adequate as security for the debt.    Upon this aspect of the situation, the complainant prays for the appointment of a receiver to take the rents and profits, to the end that they may be appropriated to the satisfaction of the mortgage debt; and there is thus presented a somewhat difficult, but very important, question, touching the practice of the federal courts in Michigan in mortgage foreclosure cases, which, so far as I am aware, has never been expressly decided in these courts, and that is whether, in view of the law in this state in regard to the rights and relations of the parties to a mortgage of real estate to the mortgaged property, as declared by statute and expounded by the supreme court of the state, the mortgagee may, upon showing that his security is inadequate, have an appropriation of the rents and profits to help out the deficiency.    The statute (How. Ann. St. § 7847) takes away from the mortgagee the right to the possession until foreclosure is completed by sale, and the sale has become absolute by confirmation.    And it was held in *Wagar* v. *Stone*, 36 Mich. 364, that this statute, by implication, secured to the mortgagor the rents and profits pending foreclosure, and that therefore an appropriation of them by the hand of a receiver for the benefit of the mortgagee deprived the mortgagor of a substantial right.    Notwithstanding this decision, the federal court in this district continued the practice of appointing receivers in such cases and for such purpose in the same way as had been customary in the early equity practice, and a number of precedents have been found in which my predecessor made such appointments after the practice in the state courts had been settled the other way.    The matter does not appear to have been debated before him on any actual dispute shown by the record, but it cannot be doubted that so well informed a judge was cognizant of the ruling of the state court on the subject, and I am convinced that he followed the original practice upon the theory that it was a matter of practice merely, and that it was the duty

of this court sitting in equity to follow its own course, instead of conforming to local practice regulations of the state; and such doubtless is the general rule. But it seems quite clear that the duty of following the original course of the court in equity does not extend to the extremity of overthrowing substantial rights. When it meets such it bends so far as is necessary to protect them, but otherwise holds on in its customary way, simply adapting itself to the emergency. This is the doctrine which was so forcibly enunciated in the now familiar case of *Brine* v. *Insurance Co.*, 96 U. S. 627. The analogy of that case, and the applicability of the reasoning of the supreme court in deciding it, to the present question are obvious, as I think, and lead to the conclusion that it is not a matter of practice simply; that the right of the mortgagor to the rents and profits *pendente lite* is a substantial one under the laws of Michigan, which must be recognized by the courts of the United States in administering the rights of parties to a mortgage. There is no practical difficulty in doing this, and matters of form must yield in the presence of legal right. I am aware that there are some decisions in the courts of the United States in which the principles of decision are inconsistent with those of *Wagar* v. *Stone, supra*, and which hold that the substantial right of the mortgagor to the rents and profits is not impaired in any legal sense by the appointment of a receiver to take them; the theory being that the hand of the court is to be regarded not as hostile, but as holding for the mortgagor as well, and turning over his property through judicial process to the payment of his just debt, when needed to meet a deficiency. It is not needful for me to express any opinion on this divergence of views in the present case, for the doctrine of adherence to the local law in real property matters looks to the rule adopted, rather than to the reasoning which has led to it, and I think that the law of the state as declared in *Wagar* v. *Stone* requires that it should be held here that a receiver of the rents and profits cannot be appointed, in mortgage foreclosure cases, upon the sole ground that the security is inadequate. Whether the court will appoint a receiver in foreclosure cases, where the property is being destroyed or wasted by the mortgagor, is an entirely different question. There is nothing in *Wagar* v. *Stone* which controverts the power and duty of the court to interfere in such cases for the protection of the security. What the court should do with any fund that might be left in the hand of the receiver, and incident to the dealing of the court with the property, might be a question subject to the control of the rule in *Wagar* v. *Stone*, but that question is not now presented. I should have, I think, no doubt that a receiver might be appointed in the circumstances last mentioned, if the waste or destruction was so serious as to justify so grave a step, but, as I have said, the facts are not so bad as to warrant it in the present case.

An offer is made in the answer to pay the amount of the installment, and the annual interest which remains unpaid, and the taxes of 1887, and this offer was repeated at the hearing of this motion. If this is done, the further prosecution of the bill for the purpose of foreclosure would, upon the views already stated, be quite fruitless; and the ques-

tion remains whether the case can be proceeded in as upon a bill filed by a mortgagee and creditor of the defendant corporation upon the ground that the management thereof is so grossly corrupt and bad as to entitle the complainant to ask the court to interfere for the protection of his debt.   That relief of this kind may be given in a proper case appears to be settled by the weight of authority.   2 Mor. Priv. Corp. §§ 797, 860. I have had some doubt whether the suit could thus be converted from its original purpose into one which was a mere incident to the primary object of the bill.   The allegations in the bill are broad enough to cover litigation on this branch, and the prayer for relief is general, and it may be that the versatility of equity practice will admit of the further suit. If counsel are advised to proceed, notwithstanding the doubt now expressed, the question may be reserved until the hearing; but if the case is proceeded with on that theory, and for that purpose only, it becomes evident that it would be improper to anticipate the very object of the litigation by a prejudgment involving the whole merits of the case.   It would be the duty of the court to hold matters in *statu quo* until the hearing, as it could only then be rightly determined whether the facts would require the proposed action or not.   It is the very common practice in appointing receivers to take such action on the coming in of the answer.   High, Rec. §§ 100, 106.   And that is quite proper where the appointment is for a merely ancillary purpose, which is concerned with the temporary incidents of the suit.   But it is otherwise where the propriety of the appointment is a principal question in the case, and it is required, if at all, by the view which the court shall ultimately take of the case. as part of the means which should be taken to afford the relief contemplated by the decree.   *Barry* v. *Briggs*, 22 Mich. 201; *Hawkins* v. *Luscombe*, 2 Swanst. 375; High, Rec. § 109.   The result of these views is that the court will order that, upon payment by the defendants into the registry of the court for the benefit of the complainant of the amount of the installment with the annual interest and the taxes of 1887, with interest thereon, within 10 days from the entry of such order, the motion for the appointment of a receiver *pendente lite*, will be denied.   If the payment be not made within that time, the matter of such appointment will be further considered by the court.   In the event of such payment, and the election to proceed with the suit, an injunction will be awarded to restrain the defendants from disposing of the assets of the corporation by way of dividends or otherwise, except as may, by further order of the court, be allowed, and subject to such conditions as the progress of the business may require, and the court may from time to time think fit, upon the representations of the parties, to prescribe.