MARSHALL & ILSLEY BANK v. FRANK M. CADY and Others.

January 9, 1899.

Nos. 11,445—(101).

75 241
f82 467

**Foreclosure of Mortgage—Appointment of Receiver before Sale.**

*Held* that, upon the evidence, the court did not err in appointing a receiver of the mortgaged premises during the pendency of an action of foreclosure.

Action in the district court for Ramsey county to foreclose a mortgage and for the appointment of a receiver. From a judgment in favor of plaintiff, entered pursuant to the findings and order of Otis, J., defendant Cady appealed. Affirmed.

*Charles J. Berryhill,* for appellant.
*William G. White,* for respondent.

75 M.—16

PER CURIAM.

Assuming, without deciding, that an order appointing a receiver in foreclosure during the pendency of the action can be reviewed on appeal from the final judgment or decree, we are of opinion that, while the plaintiff did not present a very strong case, yet we could not hold that the court abused its discretion in appointing a temporary receiver. The affidavits presented would have justified the court in finding that the mortgaged premises were inadequate security; that the mortgagor was insolvent; that for four years taxes were unpaid and delinquent, for three of which the premises had been sold, and were unredeemed, that portions of the building on the premises were somewhat out of repair, that repairs were necessary for the full preservation of the property, and that the mortgagor was receiving rent for part of the premises, which he was not applying to the payment of taxes or the making of repairs. There was some evidence that the mortgagor was using a part of the building as his sleeping apartments, and, hence, that the premises were his homestead.

While a court should ordinarily require a somewhat stronger showing for the appointment of a receiver of the mortgagor's homestead than in the case of other property, yet, when a debtor mortgages his homestead, he subjects the property to all the ordinary legal and equitable rights of a mortgagee, among which is the right to have a receiver appointed when necessary to prevent waste or to preserve the property. The same facts which would justify the court in appointing a receiver during the pendency of the action would justify it in providing in the final judgment that the receivership should be continued.

As there is neither a "case" nor bill of exceptions, the question whether the evidence justified the findings is not presented. The findings are presumed to have been based upon the evidence introduced on the trial, and not upon the affidavits presented on the motion for the appointment of a receiver during the pendency of the action.

The judgment is silent as to the duration of the receivership. No point is made on this by the defendant; but we mention the fact in order that it may not be inferred that we impliedly hold that a

receivership could be continued after a foreclosure sale, or that the rents and profits of the property could be applied towards paying the mortgage debt, or used for any other purpose than to prevent waste and preserve the property. The judgment should be affirmed.

So ordered.

BUCK, J. (dissenting).

I dissent. I think that the evidence quite conclusively shows that the premises are Cady's homestead, and this is one of the material facts that lead me to think that the receiver should not, upon the evidence adduced, have been appointed. When the trial court appointed the receiver, it was done by the court upon affidavits submitted by the respective parties. The application therefor was made in the month of July, 1897, but not granted until October 29, 1897. All of the affidavits upon which the receiver was appointed appear in the record, and the sufficiency of the plaintiff's affidavits is assailed and contradicted by the defendants' counter affidavit.

Not only was a receiver appointed by order of the court, and therein directed to collect, all and singular, the rents, profits and income of the premises, but by a subsequent order of the court the defendant Cady was ordered, within five days after the service upon him of the order, to quit, surrender and deliver to the receiver said premises, and vacate the same.

It is true that the judgment appealed from is dated November 12, 1897, and the last order directing the defendant Cady was not made until November 20, 1897, and not appealed from. But, as I regard this case, this is immaterial. The gist of the controversy is over the right to appoint a receiver at all. Probably, if there existed a sufficient cause to appoint a receiver in the first instance, and the case appeared to be one where ordinarily the right of a receiver to act at all was presented, the appointment would carry with it the right to the possession of the property. It is the right to invoke the aid of the court in the first instance, upon the case being presented, which in my opinion is one of more than serious doubt.

Such a proceeding is an extraordinary remedy, sometimes, and

perhaps I might say frequently, operating harshly, and the circumstances of peril which invoke the remedy should be established with reasonable certainty. Such appointment is not a matter of right, and should not be used where its exercise will produce injustice, and the fact should be clearly proved. Beach, Rec. (Alderson's Ed.) § 48. And this rule is strictly applied in mortgage cases, where it must clearly and fairly appear that the security is inadequate, or there is imminent danger of waste, removal or destruction of the property. Id. 574.

Mere default in the payment of the debt would not be sufficient ground for the appointment of a receiver. It is true that power to make the appointment of a receiver is generally discretionary, yet,

"The judicial authority to deal with property by means of a receiver is not unlimited or absolute." Id. § 1. "It is to be exercised in conformity to the general principles of equity jurisprudence. The petitioner should, therefore, state clearly the facts upon which the application is made, and also give proof of the same. If this is not done, the relief will be denied, and the burden of proof is always on the petitioner." Id. § 524.

As I differ from my associates, it is proper that I should fully examine the evidence which formed the basis for such appointment. The only evidence presented was by affidavits. The plaintiff presented three which showed that the property was worth $3,500, and one that the house alone was worth $1,500. The defendants presented five affidavits which showed that the value of the property ranged from $5,800 to $4,400, averaging $5,220, and the affidavit of another person states the value of the house to be $2,500 alone. The total average value of the property was $4,360. This is more than $500 over the entire judgment in foreclosure, including interest and costs up to the time of the judgment. This was all the evidence introduced upon the question of the value of the premises, and I think that the plaintiff's evidence in this respect was clearly refuted by that of the defendants.

The only evidence of waste or act of omission of duty in this respect on the part of Cady was that of one witness for plaintiff, who gave details tending to show that the dwelling house needed repairs to the amount of $400; but no other one of plaintiff's witnesses

testified to any such fact, and this testimony is squarely refuted by five of defendants' witnesses. I am not willing to take his testimony alone as outweighing that of all of the others. It certainly does not, in my mind, justify the appointment of a receiver, where the rule is, in such case, that the injury or impairment of the security must be imminent. Union Mut. Life Ins. Co. v. Union Mills Plaster Co., 37 Fed. 286.

I now come to the consideration of the question that the premises were the homestead of the defendant Cady, which he was occupying as such, and whether a stricter rule should not be applied in the appointment of a receiver to take possession of such property, and apply the income, rents and profits thereof towards the payment of the mortgage debt. This question is one of great importance, and, if a receiver can thus be appointed, it will greatly disturb, if not substantially destroy, the homesteads of thousands of people, especially in our cities and villages, where the use of homesteads, and rental therefrom, often constitute part of the income, and frequently the only income, for the support of the family itself.

As I have stated, the appointment of a receiver is a drastic measure, and to permit it to be used to oust a man and his family from their home, and to sequester the income, rental and profits thereof, is to deprive them of all the benefits of a homestead in a most summary manner. It certainly is a most extraordinary proceeding which authorizes such a step. Waples, in his work on Homestead at page 720, says:

"It is questionable whether it is ever proper to take possession of a mortgagor's homestead while proceedings to foreclose are pending. Certainly it is not proper practice as a general rule. An application for such an appointment should always be refused when the amount of the mortgage debt is a subject of contention in the case."

Of course I do not overlook the doctrine laid down by this court in the case of Lowell v. Doe, 44 Minn. 144, 46 N. W. 297, where it was held that the homestead rights of the mortgagors are subject to the ordinary legal and equitable rights of the mortgagees in respect to the mortgaged premises, which may be enforced by the appropriate remedies; citing G. S. 1878, c. 68, § 2 (G. S. 1894, § 5522),

which provides that the homestead exemption shall not extend to any mortgage thereon lawfully obtained.

But the homestead law looks with favor upon homesteads, for the good of society and for the protection of family life in all classes, and seeks to save them from the rapacity of creditors, and from destruction, so far as it can without injustice to others. The reasons for this are many and cogent. To this end, I think that all steps to deprive the owner of a homestead of the right of himself and family to occupy and receive the benefits of it, during fore-. closure of a mortgage upon it, should not be permitted, or should be resorted to in extreme cases only, and where justice would be defeated by withholding it, and only in cases reasonably clear and free from doubt. This is not such a case.

It is a notorious fact that in many instances the receiver, in the performance of what he claims to be his duty, incurs large expenses, greatly lessening the assets which should go to the payment of the debt itself, and this operates to the detriment of both parties to the action. In other words, the benefit to the owner of the homestead and his family, as a home and support, might be appropriated to the support of the receiver, by way of fees and expenses, with loss to both parties to the action. Our statute provides that,

"A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure." G. S. 1894, § 5861.

This is an express statutory enactment, so far as possession is concerned, and the owner of the mortgage is prohibited from taking possession of the property without foreclosure. Of course, this means that no right of possession arises until the period of redemption expires, viz., one year after foreclosure.

If possession of land is wrongfully withheld after foreclosure, and after final decree, the court may then compel delivery of possession to the party entitled thereto, by order directing the sheriff to effect such delivery. Id. § 6072. Thus, by clear and express statutory provisions, means are provided for obtaining possession of lands upon which mortgages are foreclosed. But until such time the mortgagee has no title, and no right of possession.

It is true that, notwithstanding the law expressly exempts a homestead, G. S. 1894, § 5522, provides that,

"Such exemption shall not extend to any mortgage thereon lawfully obtained";

But this provision does not operate to deprive the owner of the right to the possession of the homestead during the period of redemption from foreclosure sale.

The appointment of a receiver is purely of equitable origin; and whether it can, in the case of a homestead, supersede the express statutory enactment which forbids possession by the owner of the mortgage during foreclosure, may well admit of serious doubt. Equity is not intended to operate harshly, but a doctrine which permits a receiver, upon the commencement of a foreclosure action, to take immediate possession of the homestead, oust the family and receive the rents and income of the property, seems an unjust and harsh measure. Such a right is denied in American v. Farrar, 87 Iowa, 437, 54 N. W. 361, upon the ground that it is a violation of the statutory rights of the mortgagor, even in a case not involving homestead rights. See also cases cited in 2 Jones, Mort. § 1522.

But even if the power exists to appoint a receiver to oust the owner of a homestead and his family, take possession of the property, deprive them of the use and benefits thereof, and thus cut short the statutory right of redemption, I think the facts in this case fall far short of making this an extraordinary case which justifies such an extraordinary remedy, and that the receiver ought not to have been appointed.

I think that the judgment should be reversed.