ROBERT SCHOENEMAN v. LUTHER T. SOWLE and Another.[1]

December 6, 1907.

Nos. 15,515—(176).

**Attachment.**

Plaintiff, upon an admitted debt owed by defendants as partners, attached the property of a corporation, the substantial ownership of the capital stock of which was in defendants. The ground of the attachment was the alleged disposition and threatened disposition of assets by the corporation with intent to defraud creditors. The action of the trial court in dissolving the attachment is sustained.

Action in the district court for Hennepin county to recover $5,100. Defendants appeared specially and moved to vacate an attachment which had been levied on certain property. From an order, Simpson, J., vacating and discharging the attachment, plaintiff appealed. Affirmed.

*Wm. H. Hallam,* for appellant.
*Hicks & Carleton,* for respondents.

[1] Reported in 113 N. W. 1061.

JAGGARD, J.

Plaintiff and appellant appealed from an order of the district court dissolving an attachment. Defendants and respondents, as partners, owed plaintiff and appellant $5,100. Plaintiff attached the property of the Northwestern Paper Company, on the ground that defendants had "assigned, secreted, and disposed of their property," and were about to assign, secrete, and dispose of other of their property, with intent to defraud their creditors.

Plaintiff's affidavits claimed: Defendants' brokerage partnership had suspended business. Their seat in the Chamber of Commerce had been mortgaged for practically its full value. Defendants in fact owned the Northwestern Paper Corporation, and misrepresented to plaintiff that their interest therein was merely nominal. The said corporation was a mere device to conceal their property and defraud creditors. Defendants were disposing of their stock of paper, and were selling some of it at unusual prices to unusual customers. More specifically, plaintiff's evidence tended to show that one of the defendants had requested another wholesale house to take all the stock it could use, and that the man in charge of the paper store told plaintiff that defendants were selling out the stock of paper as soon as they could and were going out of business.

Defendants' affidavits tended to show: The firm had not suspended its brokerage business, but had merely moved its office, and had posted notices to that effect. For many years they had conducted a reputable and solvent business. They had "property sufficient to pay all the debts," "and leave a handsome margin of from $10,000 to $15,000, if only a reasonable time be given therefor." The Northwestern Paper Company was an independent, bona fide, and going concern, which had never sold goods except at a profit.

The essential ownership of the capital stock of the paper company by the defendants does not appear to have been disputed. A number of statements, in the affidavits of both parties, may be disregarded as statements of mere opinion or belief, and as general allegations of conclusions, having no particular force, except as they were sustained by specific facts. Jones v. Swank, 51 Minn. 285, 53 N. W. 634; Rosenberg v. Burnstein, 60 Minn. 18, 61 N. W. 684. For example, no part of plaintiff's general charge of the incorporation of the paper

company as a scheme for defrauding creditors was sustained by any facts as to its origin. The truth or falsity of the statement is an inference from other specific facts referred to, especially that the defendants were without visible means for paying the admitted debt out of any other property than that attached, and that defendants were actively engaged in disposing of the merchandise of the paper company. On the other hand, defendants' statement of the possession of sufficient property to pay all their debts and leave a margin was unaccompanied by any schedule of assets or liabilities. A part of plaintiff's affidavits concerned the sale of an elevator for a large amount. Defendants' testimony on this point, however, was that the sale was anterior to the time at which the much greater debt in controversy was contracted, and that the proceeds of such sale were used in good faith in paying the creditors of that venture.

The substance of plaintiff's case, upon final analysis, lay in the alleged fraudulent character and use of the corporation conducting the paper business. The facts, previously stated in this connection, fall short of showing the charge to be true. The trial court might reasonably have believed the defendants, who had been reputable business men for years in that community, in their sworn and direct statement as to the good faith of that corporation. Nothing in the record tends to show that the proceeds of the sales were not used for corporate business, as for the payment of corporate debts. The burden rested upon the plaintiff to make out a prima facie case and prove the truth of the facts alleged as the grounds for issuing the writ in this regard. Jones v. Swank, supra. And see 1 Shinn, Attach. p. 172, § 114; Eaton v. Wells, 18 Minn. 369 (410). It is true that neither the creditors nor the stockholders of the corporation appeared in this proceeding and objected. This circumstance, however, does not serve to eliminate the existence of the corporation as an artificial person in accordance with law. The authorities to which the plaintiff has referred us shed little light on the particular facts of this case. None of them involved such a corporation as the Northwestern Paper Company in this case. It was not a corporation to which the defendants had transferred all their stock and property as in Curran v. Rothschild, 14 Colo. App. 497, 60 Pac. 1111; nor had the defendants converted their available property into shares of stock in a corporation

which was nothing but an experiment, as in Benton v. Minneapolis T. & M. Co., 73 Minn. 498, 76 N. W. 265. Conceding the fact to be that the only available property plaintiff could have reached was and had to do with Northwestern Paper Company, it does not follow that plaintiff could ignore the existence of the corporation and proceed as if it were a partnership of which the defendants were exclusively the members.

The conclusion of the trial court is within the rule in Hicks v. Stone, 13 Minn. 398 (434). The presumption in favor of such a conclusion has been specifically applied to attachment cases. Where the affidavit for the attachment and the affidavits in opposition thereto are "such as might reasonably lead different minds to opposite conclusions as to the fact in question, and, there being no clear preponderance of proof opposed to the decision of the court below, it should not be reversed." Dickinson, J., in First National Bank of Winona v. Randall, 38 Minn. 382, 37 N. W. 799. It is to be noted in this connection, however, that the substance of the reason for the rule in Hicks v. Stone is that the trial judge, having heard and seen the witnesses, is in a better position to pass on the merits of the case than an appellate court can be with the mere printed record before it. This reasoning evidently does not apply with full force to a case where, as here, the testimony is by affidavits only. In the case at bar, however, the presumption, to whatever extent it be recognized, taken in connection with the record, we think, is sufficient to sustain the trial court.

Affirmed.