LINCOLN NATIONAL LIFE INSURANCE COMPANY v.
OTTO I. BRACK AND OTHERS.
LEONARD W. FYHRIE AND ANOTHER, APPELLANTS.[1]

February 14, 1936.

No. 30,706.

*Mark J. Woolley*, for appellants.
*Kingman, Cross, Morley & Cant*, for respondent.

HILTON, JUSTICE.

Appeal from an order of the district court appointing a receiver of certain properties owned by the defendants.

On August 1, 1932, the defendants executed and delivered to the Royal Union Life Insurance Company a mortgage deed to certain property situated in the city of St. Paul, consisting of apartments, residential property, etc., containing about 45 family units, to secure their promissory note in the amount of $32,500 with interest. Thereafter by virtue of certain proceedings, which it is unnecessary to relate, plaintiff became the owner of the mortgage and the note secured thereby. By the terms of the note defendants were to pay it at the rate of $350 a month beginning on the first day of September, 1932. Such payments were made up to and including the

[1] Reported in 265 N. W. 290.

434

first day of February, 1933. There have been payments totaling only $2,500 since that time. Plaintiff, as was its right under the terms of the note, declared the entire balance to be due and payable.

On May 11, 1935, plaintiff instituted an action to foreclose the mortgage and as additional relief asked that a receiver be appointed to take immediate possession of the property. July 1, 1935, the matter of appointing a receiver came on for hearing. It was submitted entirely on documentary evidence consisting of verified complaints, verified answer, and affidavits. On July 5, 1935, the court made an order appointing a receiver. The receiver was to take immediate possession of the property; collect the rents and profits therefrom; manage, supervise, and control the premises; make necessary repairs; pay the taxes and assessments and insurance premiums; and otherwise maintain, protect, and preserve the premises until the court directed otherwise. This is an appeal from that order.

The lower court found that the buildings were in a bad state of repair; the roofs of some were in a leaking condition; the exteriors needed repainting and the interiors redecorating, the wallpaper having cracked and peeled in certain places; the screens were left on the windows and doors during the winter months and had beome rust-eaten and torn; rear porch supports had become decayed and had partially fallen away, causing the porches and roofs to sag and create a dangerous situation; further, that defendants permitted a porch railing to become decayed and dangerous and failed to repair it even though notified to do so by the public authorities of the city of St. Paul, and that it was not until condemnation proceedings were instituted that the defendants corrected the danger.

All real estate taxes on the premises subsequent to 1930 remain unpaid. They approximate $8,000. At the time of the hearing defendants' indebtedness to plaintiff, including interest, amounted to about $33,400. The trial court also found that, after making allowance for the unpaid taxes and assessments the reasonable worth and value of the mortgaged premises was not in excess of $23,000; although the rental received by defendants for the last three years approximated $8,000 a year, only $1,500 was paid out

during that time for repairs; defendants retained all the rents, using them for their own purposes and not for the preservation of the premises. There was some evidence that the defendants were insolvent.

Affidavits made on behalf of the defendants were to the effect that the premises were in as good or even better condition than other property in the same neighborhood; the reasonable value of the property, without deducting the taxes, liens, and encumbrances against it, was at least $55,000; the failure to repair the premises as requested by the public authorities should not be considered in this action, as the danger that had been created thereby had been corrected several months prior to the time of the hearing; and that the defendants were not insolvent.

The only question here is whether the findings of fact were justified by the evidence. The general rule is that there should not be a reversal where conflicting statements in affidavits might lead reasonable minds to opposite conclusions as to the facts. 1 Dunnell, Minn. Dig. (2 ed.) § 410. Where the evidence is all documentary, as here, the determination of a fact issue by the trial court is not as substantial as in other cases, Schoeneman v. Sowle, 102 Minn. 466, 113 N. W. 1061, but "it is the duty of the trial court to determine the facts, and this court would transcend its powers if it assumed to substitute its judgment respecting the facts merely because the evidence was in the form of affidavits." Kueffner v. Gottfried, 154 Minn. 70, 73, 191 N. W. 271, 272. There cannot be such substitution in the absence of a showing that the lower court acted arbitrarily or without reasonable cause. Thornton Bros. v. Johnson-Schaffer Drug Co. 195 Minn. 385, 387, 263 N. W. 108. In the instant case the findings of the trial court are well supported by the affidavits on behalf of the plaintiff. It was not unreasonable for the court to rely on them. That findings such as there were here amply justify the appointment of a receiver is well established. Marshall & Ilsley Bank v. Cady, 75 Minn. 241, 77 N. W. 831.

Affirmed.