# BUCK and others *v.* PIEDMONT & ARLINGTON LIFE INS. CO. and others.

## (*Circuit Court, E. D. Virginia.* December 23, 1880.)

1. JURISDICTION OF FEDERAL COURT — BILL FILED IN STATE COURT— SUIT NOT AT ISSUE.—On November 30, 1880, the defendant corporation, an insolvent life insurance company, doing business at Richmond, Va., and having policies distributed in many states of the union, by order of its board of directors, but without any previous authority from its stockholders, conveyed all its property to its vice-president in trust, for the benefit of creditors, subject to certain conditions and preferences, duly set forth in the deed creating said trust.

On December 3, 1880, the trustee set on foot a suit in the chancery court of Richmond, asking the aid of that court in the administration of his trust.

On the same day a resident creditor filed a bill in his own name, in the same court, against the defendant company and the said trustee, and asked leave therein to subsequently make all the directors and stockholders parties to the suit, when their names should be thereafter ascertained. This bill also asked for all proper accounts and a receiver, and that all the creditors might be ascertained, the fund collected and distributed, and the trust deed set aside; and further asked for a personal decree for the amount paid the company by the complainant, on the ground that the company had forfeited its contract by refusing to give the complainant a paid-up policy in exchange for his original policy.

On December 11, 1880, the complainants, non-resident creditors, exhibited their bill in this suit, to which they made the company, the trustee, and the stockholders all parties defendant, and asked, in the name of themselves and of all creditors who might come in, that the trust deed should be set aside, the funds collected and distributed, a receiver appointed, and for all the general and special relief usually asked for in creditors' bills.

A rule was thereupon made by this court, calling upon these defendants to show cause, December 20th, why a receiver should not be appointed. It further appeared, upon the return-day to this rule, that the bill of the trustee had never been filed in the state court; that the cause had not proceeded to issue in either of the suits in that court; and that such court had not appointed a receiver, or taken custody of the effects of the defendant company, or made any order by which it took cognizance or assumed jurisdiction of the controversy between the parties to the respective suits. *Held,* under these circumstances, that the institution of the mere incipient steps of the two suits in the state court would not defeat the jurisdiction of this court.

2. RECEIVER—INSOLVENT LIFE INSURANCE COMPANY.—*Held, further*, that the insolvency and assignment of the defendant company, and the action of the trustee in applying to the state court for aid in the administration of his trust, exhibited all the conditions requisite to authorize this court to immediately appoint a receiver, in accordance with the application of the complainants.

3. SAME—TRUSTEE OF INSOLVENT COMPANY.—*Held, further*, that this court would not appoint such trustee and former vice president the receiver of the insolvent company.

4. FRAUD—INSOLVENT LIFE INSURANCE COMPANY—PROOF.—The mere fact of the failure of a life insurance company would seem to be *prima facie* proof that its operations have been conducted in a fraudulent manner; and, if the failure is not explained by some great casualty, such as a wide-spread pestilence, or sudden financial convulsion, or physical calamity, it would seem to be *per se* proof of fraud.

5. CONSTRUCTIVE FRAUD—MANAGERS OF COMPANY.—Such failure does not necessarily create a presumption of moral turpitude in the managers of the company, but it certainly does create a presumption of financial imbecility, or recklessness, or extravagance, or that gross negligence, which is equivalent in its consequences to fraud, and which a court is bound to regard as constructive fraud.

In Equity.

The facts of the case, so far as they bear upon the points of law decided, are recited in the opinion.

*Ould & Carrington* and *R. L. Maury*, for complainants.

*John O. Steger, W. W. Crump, Hundley & Hunter, Sands, Carter & Leake, Keen & Davis*, and others, for defendants.

HUGHES, D. J. The defendant in this cause, the Piedmont & Arlington Life Insurance Company, is avowedly insolvent, and, on the thirtieth day of November ultimo, its president, vice-president, and secretary, by order of its board of directors, and without previous authority from its stockholders, made a deed of assignment, by which it granted, set over, and assigned to its vice-president, Angus R. Blakey, all its bonds, bills, notes, choses in action, and evidences of debt of every description; all its judgments, decrees, and liens; its mortgages, deeds of trust, and securities; all its office furniture in Richmond, including desks, tables, carpets, stoves, iron safe, and other apparatus; and all its lands, lots, tenements, and parcels of real property lying in the states of Virginia, West Virginia, Tennessee, South Carolina, Arkansas,

Texas, and Florida,—in trust for certain purposes set out in the trust deed, which describes in detail the lands conveyed.

The deed gives the trustee power to sell, dispose of, and convey the said effects for cash or on such credits as he may choose, and with the proceeds to pay, first, two classes of preferred creditors, one class prior to the other; and, afterwards, to secure to the policy-holders of the company, and beneficiaries under policies issued by it, the equitable value of their policies, as of the date of the deed, discriminating the policy-holders in the states of Kentucky, California, and Maryland from those in other states of the Union; and preferring those policy-holders who may be "satisfied" with the equitable values ascertained by the trustee, over those who may be "not satisfied." By this deed the directors put the affairs of the company in liquidation, and, by necessary effect, terminated the existence of this corporation, *as* a life insurance company.

On the eleventh day of this month the complainants, who are non-residents, exhibited their bill in this court, in which they charge that the defendant company is insolvent; that its deed of the 30th ultimo is fraudulent, and was intended to hinder and delay creditors, and was made without authority of the stockholders; and, among other things, they pray for the appointment of a receiver, and for the setting aside of the trust deed as null and void. A rule was made by this court on the eleventh instant calling upon the defendant company and the said Blakey, trustee, to show cause here, on the twentieth instant, why a receiver should not be appointed.

The company and Blakey appeared on the twentieth instant, and, in the form of two pleas, denied the jurisdiction of this court to entertain this suit. One of the pleas set out, as defeating this jurisdiction, in substance, the fact that the said Blakey had on the third instant set on foot a suit in the chancery court of Richmond asking the aid of that court in administering his trust, involving the subject-matter of the suit here; but it has been shown that the bill of Blakey has not yet been filed in the said state court. The other plea to

the jurisdiction of this court set out the fact, in substance, that one C. B. Maury had on the third instant set on foot a suit in the said chancery court of Richmond, and exhibited his bill there against the defendant company and Blakey, the trustee, for purposes similar to those sought by the proceeding in this court. It has been shown that in neither of the two suits in the chancery court of Richmond has the cause proceeded to issue; that those suits are still at rules; that that court has not appointed a receiver or taken custody of the res,—that is to say, the effects of the defendant company,—or made any order by which it took cognizance or assumed jurisdiction of the controversy between the parties to the respective suits; and that the parties there are not the same as the parties to the suit here. It has been shown that the nature and objects of the suits in the chancery court of Richmond are different from those of the suit here. The Maury bill is filed in his own name alone, although he asks for all proper accounts, for a receiver, and that all creditors may be ascertained, the fund collected and distributed, and the deed set aside. It asks for a personal decree for the amount Maury has paid the company, on the ground that it has forfeited its contract by refusing to give him a paid-up policy in exchange for his original policy. It makes the company and the trustee alone parties defendant, although leave is asked to make all the directors and stockholders parties hereafter when their names shall be ascertained.

The Blakey bill, a copy of which is filed in this court, though the original is not yet filed in the chancery court of Richmond, asks the assistance of the court to carry into effect the provisions of the trust deed. On the other hand, the suit in this court asks, in the name of the complainants and of all creditors who may come in, for the special and general relief usually asked in creditors' bills, that the trust deed shall be set aside, that the funds be collected and distributed, and that a receiver be appointed; and it makes the company, the trustee, and the stockholders all parties defendant. I overruled the objections raised by the two pleas on the following grounds, viz.: that non-resident citizens had a constitutional

right to sue this company in this court; that this company had policies distributed in many states of the Union, whose holders could not hear of its bankruptcy for a considerable time after its avowal here; and that the individual action of one of its officers, and of one of its creditors, who happened to be resident on the spot, in taking the mere incipient steps of a suit in a state court within a few days after the avowal of the company's bankruptcy, and before it could be known at a distance, more especially in the absence of any action of the state court assuming jurisdiction of the controversy or of the *res,* could not defeat the constitutional right of non-residents to sue in this court. And, in consideration of the fact that the defendant company's transactions embraced many states, making a United States court the more appropriate tribunal for the adjudication of its affairs, I decided that this suit must go on here.

The pleas to the jurisdiction being thus disposed of, I am now to pass upon the application of complainants for the immediate appointment of a receiver. The defendant company is confessedly insolvent. Being a life insurance company, insolvency and an assignment of all its effects in liquidation is final and irretrievable death to its corporate existence. It is incapable of taking care of its own effects, and has itself confessed the fact by assigning them to a trustee. That trustee has confessed his inability to administer the property in accordance with the deed, by taking steps to obtain the aid of a court of chancery in the task. By the insolvency, by the act of the defendant company in making an assignment in liquidation, and by the act of the trustee in invoking the aid of a court, the defendants in the suit here have themselves exhibited all the conditions requisite to authorize a court to appoint a receiver. It is useless to contend that courts should observe extreme caution in entering upon the appointment of receivers. Such caution is only necessary where the defendant company's insolvency is denied, where the company is in the full exercise of its franchises and use of its property, and where the act of the court would abruptly and harshly arrest it in its career of action, and wrest

its property from its use and control. It is true that in such a case a court should consider well the consequences of its action, and adopt the extreme recourse only when the facts of the case most clearly justify the measure.

But this defendant company is already extinct; its franchises are already forfeited and abandoned; its property already put by its own act out of its own use and possession, and committed to liquidation. Having thus itself made a case for a receiver, and actually anticipated a court in appointing one, this court is relieved from the painful inquiries and delicate responsibility usually devolved upon courts in passing upon applications for receivers; and, therefore, I am confronted with but a single question, which is whether or not this court will allow the defendant company to appoint its receiver for it.

This is an insolvent life insurance company—a company which has approached thousands of men and women in the land and said, if out of your annual earnings and savings you will pay me annual premiums of money during your natural lives, I will at your death pay to your widows and children certain thousands of dollars for their support. Having received these premiums for 12 or 15 years down to a few weeks past, it now reveals to the world that it cannot comply with the solemn obligations which it had undertaken. I think that the mere fact of the failure of a life insurance company is *prima facie* proof that its operations have been conducted in a fraudulent manner; and, if the failure is not explained by some great casualty, such as a wide-spread pestilence, or sudden financial convulsion, or physical calamity, I think that it is *per se* proof of fraud. I will not pretend to say that it creates the presumption of moral turpitude in the managers of the company, but it certainly does of constructive fraud; that is to say, of that financial imbecility or recklessness or extravagance, or that gross negligence, which is equivalent in its consequences to fraud, and which a court is bound to regard as constructive fraud.

Would the court be justified in allowing a trustee appointed by such a company, in the very deed in which it avowed its

insolvency, to remain in the custody of its effects and to administer them? Could the court expect to attract and retain the confidence of the public and of its suitors, if it should sanction such an act? I think not. The insolvency and abnegation of the company left its effects in, the legal and rightful custody of no one, and the court, must at once provide for the emergency by appointing a receiver.

It has not been the policy or practice of this court, in appointing receivers for insolvent companies, to appoint any one who had been officially and responsibly connected with the mismanagement which brought his company's affairs to ruin; and, for that reason, I cannot appoint Mr. Blakey as receiver here, in whose personal integrity I would otherwise have the utmost confidence, and whose high character I most cheerfully acknowledge.

The judge then announced the appointment of A. L. Boulware, Esq., as receiver of the company.