### CONSOLIDATED TANK-LINE CO. *v.* KANSAS CITY VARNISH CO.

*(Circuit Court, W. D. Missouri, W. D.    September 5, 1890.)*

APPOINTMENT OF RECEIVER.

    Where a manufacturing corporation has debts exceeding its capital stock, and it is unable to meet its paper as it matures, and its assets are in such condition that they are not available either as security or collateral for the purpose of borrowing or for the purpose of conversion, and it is apparent that enough would not be realized from a forced sale of its plant and accounts to meet its obligations, which will soon become due, and where its credit is gone, and its directors have of their own accord executed a deed of trust of all the corporate property for the benefit of certain creditors to secure paper indorsed by the directors, and where the trustee has taken possession, an application by the non-preferred creditors to enjoin further proceedings under the deed of trust and for the appointment of a receiver will be granted.

In Equity.

*Henry Wollman*, for complainant.

*Lathrop, Smith & Morrow, J. L. Wheeler*, and *D. J. Hoff*, for defendant.

PHILIPS, J., *(orally.)* This is an application for injunction and the appointment of a receiver. I have given the case such consideration as the limited opportunity would permit. Of course, on this preliminary hearing, before the coming in of an answer, the principal questions to be determined by the court are as to the existence of the solvency or insolvency of the defendant corporation, and the necessity for the appointment of a receiver under the circumstances. It appears from the face of the bill, and the affidavits *pro* and *con* submitted on the preliminary hearing, that this Kansas City Varnish Company, with a paid-up capital stock of $26,000, in the course of a year's business or more, has to-day an existing indebtedness of about $32,000 in round figures. The affidavits show, as well as the allegations of the bill and the correspondence with its creditors, that for some time past it has been under great financial distress. It has been under an irresistible pressure, unable practically to meet its accruing and maturing obligations. While it is true that the great body of the indebtedness of this concern does not mature until this month, yet part of the obligations are due, and

for some time back some of its creditors have been exigent and urgent, and they have complained that the debtor has been delinquent and slow. On one debt of $2,500, owing to the Consolidated Tank-Line Company, one of the creditors here, some time ago the last payment of $250 was all that it could make. It has no money in bank, but has been overdrawing, and the matter of a check of a hundred dollars was repudiated and protested for non-payment. It claims by affidavits read on this hearing to have about $25,000 of assets in the form of bills receivable, notes and accounts, and outstanding claims; but the court, at least on this preliminary hearing, is clearly justified, from all the facts and circumstances in evidence, in concluding that these claims are not in tangible shape; that its assets are not available for immediate emergencies. Otherwise, either by placing these assets or accounts and notes as collateral security, it might have obtained loans, or it might have converted some of them by reasonable discounts, to have raised sufficient money at least to keep the concern going; to impart to it some vitality and some life. It is, however, quite inferable from the character of the correspondence and other facts disclosed that it has run its length of credit about to the end; so that on the 25th day of August last past, the board of directors, who seem to be its principal and almost exclusive stockholders, on final conference and consultation concluded that the best thing they could do was to make a conveyance in the form of a deed of trust, in which they assigned every article and item of property it has, all its notes and accounts, even its lease on the property, down to a little pony and surrey; everything, with great particularity, were transferred to the trustee for the benefit of certain specified creditors. In other words, it transferred by this deed of trust everything it has except the mere franchise. It simply reserved the franchise *ad hoc;* all else it conveys. This deed of trust seems to have been made under some emergency. It was put to record at 9 o'clock and 50 minutes at night, and at 10 o'clock the same night, as stated by the trustee, he took possession of the concern.

Now, it is true that, as a rule of equity practice, the courts are very reluctant to appoint receivers, upon the idea that it is a practical displacement of the board of directors. It is an assumption of the functions of the directors. It displaces the board of managers placed there by the stockholders, who sustain the relation of trustees for the stockholders, trustees for the corporation, and trustees for its creditors; and, before the court will take charge of the corporation, and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary action for the protection of the creditors, stockholders, and all parties concerned. But the court, in this case, has been relieved of this aspect or embarrassment of the question somewhat by the conduct of the board of directors. This deed of trust, by which they have placed the entire assets and property of the concern in the hands of this trustee, and authorized him to take immediate possession, which he did do at once, and has since been in the absolute, unrestricted, and un-

divided control of the whole property, amounts in effect to an ab-dication of the functions of the board of directors. They thereby confess the fact that the concern can no longer go under their manage-ment, and they have given up its control by their own voluntary act to a trustee. In that attitude it is now a question, in respect to these non-preferred creditors, whether a court of equity should interpose and take charge of this property and manage it.

There is one very prominent fact connected with the history of the case which is not unworthy of consideration. It appears that on a part, in fact a very considerable part, of the indebtedness secured by this deed of trust, the board of directors, or at least a part of them, are themselves indorsers. They are sureties upon these notes; and this movement on the part of the board of directors was entirely voluntary. It does not appear that they were urged to the making of this deed of trust by the creditors, but they did this without the knowledge of at least some of the creditors; and it is to be assumed for the purpose of the present in-quiry that the board of directors in making this deed of trust, by which they preferred the debts upon which they were sureties, were more con-cerned for their own protection than for that of the creditors, because they are bound to the creditors for the debt, and it appears that they are solvent. That presents this question: It has been held—and I had occasion to consider the question very thoroughly while on the court of appeals, (*City of Kansas* v. *Allen*, 28 Mo. App. 132,) and the opinion has been followed since by the supreme court of this state, or cited with approval—that, after a business corporation ceases to be a "going con-cern," and is no longer possessed of vitality enough to survive and con-tinue its business, and the board of directors conclude that they can go no further, then the directors become, *eo instanti*, by that very act, trustees for the benefit both of the stockholders and the creditors; and it is not within the power or competency of the trustees to prefer them-selves, the board of directors, as creditors of the concern. Their rela-tion becomes one of trustee to the whole property. They must admin-ister the whole assets of the corporation for the benefit of all of the cred-itors, to be distributed *pari passu* equally between them; and they can-not, after the corporation reaches that juncture and condition of affairs, make a preference for themselves. Now, these directors, in so far as the debts are concerned on which they are sureties, if this deed is sustained, are in effect doing by indirection what they cannot do directly, provided this concern is insolvent, and no longer a going concern. I do not un-dertake to say at this hearing or at this juncture that the case as pre-sented comes within the rule laid down in the cases to which I refer, but it strikes me, upon first impression, as being so nearly in line with the principle involved, that for the purposes of this preliminary hearing the court ought to treat the matter for the time being as if these directors had undertaken to secure and prefer themselves to the exclusion of other creditors of the concern, taking advantage of their inside knowledge of the actual condition and workings of the corporation to gain a personal advantage. They are bound to consider themselves as trustees of a trust

which they are to administer as any other trustee, with absolute impartiality, having no friends to reward or enemies to punish; and when they undertook to do what has been done, to say the very least, it creates suspicion. Of course, that is a question which lies beyond the present decision for ultimate consideration and determination, when all the facts are before the court; but I think for the purposes of this preliminary hearing the court ought to construe that special act against the board of directors, as one which ought to invoke and invite the interposition of a court of equity for the protection of the interests and rights of all the parties concerned, *ad interim.*

Going back to the question of solvency, it is very difficult for a court to lay down a definition of solvency or insolvency that is applicable interchangeably to every case. A great many authorities have been cited by counsel under the bankrupt law. I would not in this case be disposed to apply the rigor of the rule that obtains in bankruptcy proceedings,—that whenever a business concern is unable to meet its commercial paper as it matures, in the ordinary course of business, it is insolvent. The term must necessarily be construed with reference to the particular facts of the case. Take the case of a farmer who has his farm and stock. He may have a note outstanding, and may be unable to meet it at maturity, and yet he has property, both land and stock, subject to execution, which could be seized and applied to the payment of debts. We would not apply to him the rigors of the commercial law. Then take a corporation like this, a business concern. I think a medium ground is to be taken between the bankrupt law and that in the case of the farmer such as I have presented. A business concern like this, with nothing but its franchise, its capital stock, and the intelligence and business capacity of its board of directors, depends for its very life upon credit. It could hardly run a day without credit. It is buying material, manufacturing and selling it. It must have credit in bank. It must have credit with its vendors,—the parties from whom it buys. I think it would be a very safe rule to say in a case of that character that where it is unable to meet its paper in bank and to other creditors as it matures, and its assets are in such a condition that they are not available either as security or collateral for the purpose of borrowing, or for the purpose of conversion, and, in addition to that, it is apparent that there would not be sufficient money realized by sale under execution to meet these liabilities, it is practically insolvent.

Respondents estimate in their affidavits the plant of property at $20,000, and the paper owing the concern—notes and accounts outstanding —at $25,000. I think the court would be very safe in saying that, if on a forced sale or execution it had to be wound up within a reasonable time and under ordinary circumstances, there should be realized 50 cents on the dollar of those assets, it would be a pretty large dividend; and it would take about 75 per cent. to meet the debts due and maturing in this month and shortly after. So that I think the concern, with $32,000 of outstanding indebtedness now nearly due, with no money in bank, credit gone, unable to meet a check of a hundred dollars sent to

bank, is sick, and almost sick unto death; and whether it can survive will depend much on the good nursing a court of chancery can give, and by which it may possibly be resuscitated. Now, these respondents seem to think—and hope is always a great thing in commerce—that they can survive with a little rest. I know of no better means for them to keep life in them and stay on their feet than for the court to take charge of this matter for them. In the management of a concern like this, in an insolvent condition, with the latitude which a court of equity has in running the business, and giving it provisional credit, authorizing a receiver to go ahead with the business, keeping it going, if the court discovers there is any hope and vitality in it, seems to me to be best for all parties in interest. If the assets turn out as respondents seem to think they will, there will be no end put to the corporation. They can pay off these debts, or the court will pay them from the business, and they have their franchise. I think this a case where sound discretion and a proper regard for the interests of all parties concerned will justify the court in interposing to enjoin further action under the deeds of trust for the present, reserving the question of the rights of the respective parties for determination upon final hearing. The court does not desire to be understood as casting any reflection upon the competency or trustworthiness of the present trustee. There is only this to be said in respect to that: He was chosen by this board of directors; he is in the employ of the president of the concern in another branch of his business; he is without bond, and is possessed of little property. While he might manage the affairs of the concern with ability and fidelity, yet a receiver is required to give bond. He then becomes an officer of the court, and is under the direction and supervision of the court. This is better for all the creditors. As to the preferred creditors, it is to their interest that the very most be realized out of the assets possible. It is also better for the non-preferred creditors that the matter be managed by the court for the time being. So that as the matter stands the prayer of the petition will be granted provisionally. A provisional order of injunction will be made, and if you can agree upon a receiver the court will appoint him, otherwise the court will select one.