PARTHENA SLOVER *et al. v.* COAL CREEK COAL COMPANY.

*(Knoxville.* September Term, 1904.)

1. **CREDITORS' BILL.** Actions for torts form no basis for.
   Claims against a corporation, based on unliquidated damages for
   torts alleged to have been committed by it, cannot, standing
   alone, form any basis for a creditors' bill in equity against such
   corporation. (*Post, p.* 431.)

2. **SAME.** Same. Bill quia timet does not lie to impound assets
   of corporation to secure expected judgment in action of tort.
   The mere alleged fear of the loss to the complainants, as hold-
   ers of an unliquidated claim for damages for an alleged tort
   committed by defendant, a mining corporation, and sued for
   in an action at law, in this, that in earlier suits for claims grow-
   ing out of the same occurrence, judgments and executions will
   be obtained prior to the obtention of judgment and execution
   in behalf of complainants, and that by levy of such prior execu-
   tions, the leases under which the defendant conducts its mining
   business will be forfeited, or, at all events, the assets of defend-
   ant will be consumed thereby, and nothing will be left for the
   complainants, is no ground for impounding the property of the
   defendant, and is insufficient to support a bill quia timet for
   such purpose. (*Post, pp.* 423-434.)

3. **SAME.** Same. Same. Bill quia timet will not lie to impound
   profits of a corporation to secure expected judgment in action
   of tort.
   A ground for fear of loss alleged in such case that the defendant
   is using its best energies towards working out its leases and is
   distributing the avails as profits among its stockholders, and
   that the mines will be exhausted by this process, and in the
   pockets of the stockholders, in the form of dividends, before
   complainants can obtain a judgment, is insufficient to support

Slover v. Coal Co.

a bill for the purpose of impounding defendant's profits or to support a bill quia timet for such purpose. (*Post, pp.* 432, 433.)

4. **RECEIVER.** No appointment upon bill in chancery court to secure expected judgment in action of tort.

An allegation that the purpose of the defendant corporation is to exhaust its mines and property by earning and paying out the profits and dividends in order to defeat the complainant's and other persons in their damage suits for torts, is no ground for application to a court of equity for the appointment of receiver to take charge of the assets of the defendant—whatever might be the relief obtainable by attachment at law. (*Post, p.* 433.)

5. **SAME.** Same. No appointment at instance of complainant to secure expected judgment in action of tort against corporation, when.

The chancery court is not authorized to appoint a receiver, either under our statutes or under the ordinary powers of courts of chancery, at the instance of complainants in a suit for the appointment of a receiver as its real object or chief purpose, to the end that the property of a corporation may be held and managed by the receiver in a court of chancery to await the decision of such action at law, to prevent waste of the corporate property in the meantime, with the view of having it, with the accumulated profits, ready to turn over in satisfaction of such judgment as may be obtained in such action at law; especially, where it is not alleged that the corporation owes any debts whatever, or that there is any ground for supposing its insolvency except the fact that a large number of damage suits have been brought against it, and that the amounts claimed in the various writs and declarations in the aggregate exceed the total assets of the corporation. (*Post, pp.* 434-445.)

Code cited and construed: Secs. 4730, 4765, 5165, 5173, 5181, 5182, 5549 (S.); secs. 3716, 3750, 4154, 4162, 4163, 4518 (M. & V.); secs. 3000, 3037, 3417, 3425, 3426, 3768 (T. & S. and 1858).

Numerous cases in other States cited in the opinion, pp. 436-444.

Slover v. Coal Co.

**6.  SAME.**  Appointment until administration can be granted.
The chancery court has power to appoint a receiver until admin-
istration can be granted, where the right of administration is
in litigation, or other impediment exists.  (*Post, p.* 443.)

Case cited and approved:  Smiley v. Bell, M. & Y., 378, 380.

## FROM ANDERSON.

Appeal from the Chancery Court of Anderson Coun-
ty.—HUGH G. KYLE, Chancellor.

WEBB, M'CLUNG & BAKER and INGERSOLL & PEYTON,
for plaintiff.

CHARLES T. CATES, JR., R. E. L. MOUNTCASTLE, and H.
B. LINDSAY, for defendants

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed by Parthena Slover, the
widow of Wm. H. Slover, and by L. Slover, the widow
of J. B. Slover.

The bill charges, in substance, that Wm. H. Slover
and J. B. Slover came to their death in 1902, through an
explosion in the Fraterville mine in Anderson County;
that this explosion was caused by the negligence of the
defendant company and E. C. Camp and G. N. Camp, of-

ficers of the company; that over 180 people were killed at the same time in the mine; that more than 150 suits have been brought, and are now pending in the circuit courts of Knox and Anderson counties, to recover damages for the death of said persons; that the aggregate amount of the damages thus sued for exceeds $1,000,000, a sum in excess of all of the assets of the defendant company; that the suits of complainants were not among the first brought; that perhaps 100 actions antedated their suits; that it is therefore probable that many judgments for damages will, in the due course of proceedings at law, be obtained, before they recover judgment; that, if the ordinary course of law be pursued, several hundred thousand dollars of assets will be required to satisfy such preceding judgments, and this will, in all probability, exhaust all of the assets of the defendant company, and that nothing will be left for the complainants.

It is further alleged that the defendant company is the owner in fee of only a very small amount of real estate, if any; that the total value of real estate supposed to belong to it is less than $50,000; that the chief assets of the defendant company consist of leases and mining privileges in certain coal lands owned by other persons, with certain railway rights and privileges which yield large revenues; that complainants believe and fear that at the time when defendant's property, in due course of law, shall be brought to sale for the satisfaction of such judgments as they may recover, the same will realize less than $100,000; that they will thus be deprived of realizing anything upon their hoped-for recoveries.

The bill further alleges "that complainants are informed and believe that the said defendant company is now mining upon said property leased by it more than seven hundred tons of coal daily, all of which is sold under a permanent contract with the Southern Railway Company for its own supply of fuel, and that its profits for each ton of coal thus sold is fifteen cents; that thus the net profits upon each day's operation of said Coal Creek Coal Company is fully $100; that this contract with the Southern Railway Company does not consume the entire product of the defendants' operations, but, as complainants are informed and believe, said defendants sell a large quantity to other consumers, so that usually the annual profits of this contract with the said railway company amounts to $30,000 of steady revenue to the defendant company, and its sales to other persons aggregate a profit of about $20,000 additional, thus making their annual net profits fully $50,000."

The bill further alleges that the defendant company has a large revenue from the rent of its houses to miners.

The bill further proceeds: "The only other asset belonging to said defendant from which complainants and said other plaintiffs can expect payment of their just claims consists of the mines which are located on coal lands belonging to the Coal Creek Mining & Manufacturing Company, and leased from that company by the Coal Creek Coal Company; that the coal in the leased

lands constitutes its only values, and the land will become valueless when the coal is taken out of it.

"Complainants are informed, believe, and charge that the Coal Creek Coal Company has, since said actions at law were begun, declared it to be its policy to delay said suits as long as possible, and draw the coal out of said mines as rapidly as possible, and pay the profits out in dividends to its stockholders; so that when recoveries shall be had in said actions at law there will be nothing but an empty shell for your complainants and said other plaintiffs in said actions to make their money out of, and said company is now doing this.

"As hereinbefore stated, said mine explosion occurred on May 19, 1902. Immediately thereafter E. C. Camp, who owned over fifty per cent. of the $200,000 of capital stock of the Coal Creek Company, and his brother, G. N. Camp, who owns more than $25,000 of the stock of the said company, conceived the plan of delaying the said actions at law as long as possible, and in the meantime of working out and exhausting the coal in the said mines as rapidly as possible, and with this purpose and end in view, so complainants aver and charge, that they did, within seven days after the occurrence of said mine disaster on May 26, 1902, declare and pay out to themselves and the other stockholders a dividend of $10,000, and they did, on October 14, 1902, declare and pay out a second dividend, amounting to $16,000, and that on December 2, 1902, they declared and paid out a third dividend of $20,000, thus making a total of $46,000 paid out in div-

idends between May 26 and December 31, 1902, and they had, just previous to said mine disaster on March 27, 1902, declared and paid out a dividend of $20,000 making a total of $56,000 in cash paid out in dividends during the year 1902.

"Your complainants further aver and show, upon information and belief, that said Coal Creek Coal Company and its stockholders are now engaged as rapidly as possible in robbing said mines, that is, not mining them in such a way as to produce the greatest ultimate profit out of the coal therein, and are drawing the pilliars and otherwise mining said property in such a way as to produce the greatest profit in the shortest possible space of time; and complainants aver that they are doing this in pursuance of their fixed plan and policy and design to reduce to cash the assets of said company as quickly as possible, and pay the same out in dividends among the stockholders, so as to leave no funds or assets with which to pay the judgments which will be obtained against the defendant company by your complainants; and complainants are further informed, believe, and charge that the Coal Creek Coal Company, and its stockholders, if permitted to mine out such coal at the rapid rate at which they are now exhausting same will mine out the entire body of the coal in the lands covered by their leases within the next four years, or five years at most."

The bill further alleges: "That complainants are informed, believe, and charge that the lease from the Coal

Creek Mining & Manufacturing Company to the defend-
ant Coal Creek Coal Company, under and by virtue of
which said defendant holds and operates the mines, pro-
vides that, in case execution shall be levied upon the
same, the lessor shall have the right to declare said
lease terminated, and resume possession of said
leased premises. This provision was, no doubt, in-
serted for the purpose of preventing the working of said
mines and the payment of royalties to the lessor from
being stopped; but the operation of said mine by a re-
ceiver of your honor's court would not stop the work of
said mines and the payment of royalties. If, however,
complainants and the other plaintiffs in said actions at
law must wait until they recover judgments at law, and
then levy upon said leasehold, the lessor may instantly
terminate the defendant's title and defeat complainants
altogether in the collection of their claims."

The bill does not charge any debts to exist, but only
the several actions for damages above referred to.
Speaking in respect of these claims for damages so pre-
ferred, the bill charges as follows:

"Complainants charge, in view of the heavy liabilities
hereinbefore mentioned (those involved in the damage
suits), and the smallness and character of its assets,
that said defendant Coal Creek Coal Company is insol-
vent, and should be wound up as an insolvent corpora-
tion in this court and in this cause."

The bill prays that it may be taken and maintained
as a general creditors' bill filed in behalf of the present

Slover v. Coal Co.

complainants, and in behalf of the plaintiffs in all the
other actions at law, and in behalf of all the creditors
of the corporation; "that a receiver be appointed at once
to take charge of all the assets of the defendant Coal
Creek Coal Company, and operate said mines, and col-
lect the rents of said other lands and the houses on the
said defendant Coal Creek Coal Company and any and
all other property belonging to said defendant, and to
preserve said property and all the rents and income
thereof until adjudications of the rights of said parties
shall be made; that an order be made assuming juris-
diction of this bill as a general creditors' bill to wind up
the defendant as an insolvent corporation for the bene-
fit of complainants and said other plaintiffs in said act-
ions at law; that said plaintiffs in said actions at law
shall be permitted to prosecute their said suits to
final judgments, but requiring them to file tran-
scripts of such judgments in this cause for payment,
and inhibiting and enjoining them and all other credit-
ors and claimants from otherwise suing the said defend-
ants or attempting to subject the property and assets
of said defendant by levy or otherwise except in this
cause and in this court; that, owing to the peculiar char-
acter of said mining property, the receiver be required
to operate same and accumulate a fund for the ultimate
payment of the claims of complainants and other claim-
ants; that all such orders, decrees, and proceedings may
be made, pronounced, and had as shall be necessary and

proper to effect the objects and purposes of this bill,"
and for general relief.

The company demurred to the bill, and made therein
the following points: First, that it contains no equity
on its face, in that it appears the defendant is a going
concern, and solvent, and no liabilities are shown
against it except such as set forth in the damage suits,
which liabilities are not admitted by the company, but
are shown to be denied and contested; second, that com-
plainants' bill is unknown to the forms of law; third,
that no cause of action is found in the allegations that
the defendant company is mining coal and dividing the
profits among its stockholders, nor in the fact that its
lessor will have the right to take possession of the prop-
erty in case execution should be levied upon the lease-
hold interest which the defendant company obtained
from the said Coal Creek Mining & Manufacturing
Company; fourth, that the bill charges that the other
two defendants, the two Camps, are liable, and does not
allege that they are insolvent, and hence, if there be any
right of recovery, it appears from the bill that the judg-
ments may be collected out of said two defendants. We
have omitted one of the grounds of demurrer, which re-
fers to an allegation in the bill which we have also
omitted, concerning the finding of the coroner's jury,
such finding being wholly beside the present inquiry.

In disposing of the foregoing grounds of demurrer we
shall not take them up *seriatim* but in such order as may

seem the most convenient; nor shall we discuss the last one.

It is obviously true that claims against a corporation based on unliquidated damages for torts alleged to have been committed by it cannot, standing alone, form any basis for a creditors' bill in equity against such corporation. This is too plain to need the citation of authority. If the rule were otherwise, it would be within the power of any designing person to wreck a corporation by suing it for a tort and laying the damages high enough in the writ or summons and declaration to more than cover all of its assets. Such a case cannot be brought within the scope of the rule asserted by some authorities that a creditor by judgment (*Union Mut. Life Ins. Co.* v. *Union Mills Plaster Co.* [C. C.], 37 Fed., 286, 3 L. R. A., 90, 94), or even a simple contract creditor (2 Morawetz, Corp., 797, 860), may, under proper allegation, sue out an injunction and obtain the appointment of a receiver to prevent waste and misapplication of the assets of a corporation, when such waste imminently imperials the collection of his debt.

It is clear from the face of the bill that the only purpose for which the injunction was sought was to prevent the interference of other persons with the property asked to be placed in the hands of a receiver, pending the winding up of the corporation and the distribution of its assets under the supposed general creditor feature of the bill.

Likewise there can be no doubt that the chief purpose

of the bill was to obtain the appointment of a receiver in order that the court might, through such receiver, hold and administer the property of the corporation, and have it ready to hand over to the plaintiffs in sundry suits at law, upon final judgment having been pronounced in all of the one hundred and fifty-odd suits pending against the corporation in the circuit courts of Anderson and Knox counties; and this, too, when it is not alleged that the corporation owes any debts whatever, or that there is any ground for supposing its insolvency except the fact that a large number of damage suits have been brought against it, and that the amounts claimed in the various writs and declarations in the aggregate exceed the total assets of such corporation.

The counsel for the complainants do not cite any authority for such an extraordinary bill, and after a very extended examination of the subject, we have not been able to discover any.

Counsel say in the brief that they rely upon the principle that supports bills *quia timet*. We are not aware that this principle has ever been extended so far as it is now sought to extend it. One ground alleged for fear of loss to the complainants is that in earlier suits judgment and execution will be obtained prior to the obtention of judgment and execution in behalf of the complainants, and that by levy of such prior executions the leases under which the defendant conducts its mining business will be forfeited, or, at all events, the assets of the defendant will be consumed thereby, and there will

be nothing left for the complainants. This is no ground for impounding the property of the defendant. If the fears of creditors were good reasons for impounding the property of debtors, not many debtors would be out of the hands of the courts. And how great the injustice of such a rule would be when it is left to the supposed creditor, as in damage suits, to himself fix the presumptive amount of liability by the mere act of stating it in his writ and declaration.

Another ground for fear alleged is that the defendant company is using its best energies towards working out the leases, and is distributing the avails as profits among its stockholders, and that the mines will be exhausted by this process, and in the pockets of the stockholders in the form of dividends, before the complainants can obtain a judgment. It is alleged that the purpose of the defendant is to so exhaust the mines in order to defeat the complainants and other persons having damage suits. If there be any relief for the complainants on this state of facts—a point which we should not undertake to decide in the present case—it would be by attachment at law, the only forum that can try a suit for unliquidated damages to persons or property, and not by application to a court of equity for the appointment of a receiver to take charge of the assets of the company.

As we have said, really the only object of the bill is to have a receiver appointed to take charge of the assets of

113 Tenn—28

the defendant corporation, a solvent concern, hold and administer those assets pending the litigation of the damage suits in the circuit courts referred to, and to have them ready for distribution among the several plaintiffs in these suits when they shall all have been brought to a close, or for distribution among such of them as shall obtain judgments against the defendant.

Our statutes upon the subject of appointing receivers, so far as they have any bearing at all upon the phase of the subject under examination in the present case, are as follows:

"The courts of this State are all vested with power to appoint receivers for the safe-keeping, collection, management, and disposition of property in litigation in such courts, whenever necessary to the ends of substantial justice, in like manner as receivers are appointed in courts of chancery." Shannon's Code, section 5549.

"The party in whose favor a judgment or decree is rendered against a corporation may sue out a *distringas* or *fieri facias,* to be levied as well on the choses in action as on the goods, chattels, lands, and tenements, of the corporation, and, in case of a levy on choses in action, the court may appoint a receiver to collect the same." Shannon's Code, section 4730; See Id., section 4765.

"An action lies under the provisions of this chapter, in the name of the State against the person or corporation offending in the following cases: . . . (3) When any persons act as a corporation within this State, without being authorized by law; (4) or if being

incorporated, they omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation; (5) or exercise powers not conferred by law; (6) or fail to exercise powers conferred by law and essential to the corporate existence." Shannon's Code, section 5165. "The court is authorized, upon the filing of the bill, properly verified, in all proper cases, to grant attachments and injunctions, and appoint receivers to effect the ends of justice, and to make all such orders, rules and decrees, according to the practice of a court of chancery, as may be necessary to accomplish the objects had in view." Shannon's Code, section 5173. "If it be adjudged that a defendant corporation has, by neglect, nonuser, abuse, or surrender, forfeited its corporate rights, judgment will be rendered that it be altogether excluded from such rights and be dissolved; and also that the corporation, its directors, or managers, as the case may be, pay the costs." Shannon's Code, section 5181. "Such judgment of dissolution does not extinguish the debts due to or from the corporation; but the court shall appoint a receiver, with full power to take possession of all the debts and property, and sell, dispose of, collect, and distribute, the same among the creditors and other persons interested, under the orders of the court." Shannon's Code, section 5182.

And, in addition, it may be said that courts of chancery in this State have, from the earliest period of their existence, without special reference to the foregoing statutes, assumed to exercise all the powers that courts

of chancery generally exercise in respect of the matter
of appointing receivers.

The general and well-nigh universal rule is that re-
ceiverships are only provisional, or auxiliary to the
main purpose of an action; and that, if the jurisdiction
exist to make the appointment of a receiver the chief
purpose of the action, it is rarely exercised. *Vila* v.
*Grand Island, etc., Co.* (Neb.), 97 N. W., 613, 63 L. R.
A., 791; *State, ex rel. Merriam,* v. *Ross* (Mo.), 25 S. W.,
947, 23 L. R. A., 534; *Whitney* v. *Hanover Nat. Bank*
(Miss.), 15 South., 33, 23 L. R. A., 531; *Wallace* v.
*Pierce-Wallace Pub. Co.* (Iowa), 70 N. W., 216, 38 L. R.
A., 122, 63 Am. St. Rep., 389; *French Bank Case (La
Societe Francaise* v. 15 *Judicial Dist. Ct.*), 53 Cal., 495;
*Jones* v. *Bank of Leadville,* 10 Colo., 465, 17 Pac., 276;
*Neall* v. *Hill,* 16 Cal., 145, 76 Am. Dec., 508; Smith, Re-
ceiverships, section 13; Spelling, Priv. Corp., section
851; 23 Am. & Eng. Ency. Law, p. 1001.

In the first cited case—*Vila* v. *Grand Island, etc., Co.,*
supra—there is a full and able discussion of the ques-
tion, with a copious citation of authorities both in the
original opinion and in the opinion delivered on the pe-
tition for rehearing. In the latter it is said:

"In the former opinion it was held that a receiver-
ship is a purely auxiliary remedy, and cannot be main-
tained in a proceeding instituted solely for that purpose.
The enunciation of this proposition is vigorously chal-
lenged by appellee's counsel, but a full investigation and
consideration of the subject has dispelled from our

Slover v. Coal Co.

minds all doubts, if any have heretofore existed, as to its being a correct and sound exposition of the principles of equity governing and controlling a suit when applied to a condition of facts such as are presented by the record in the case at bar. Of course, when the statute authorizes it, and in some well-recognized exceptions to the general rule, the appointment of a receiver may be and is the main object and purpose of the suit or proceedings. It is likewise true that in some cases of extraordinary character affecting *quasi* public corporations, and, where public interests are so involved as to demand the extension of the equitable principles applicable to receiverships so as to protect such interests, some courts have assumed jurisdiction, and claim authority to appoint a receiver when that is the main purpose of the suit; yet such cases have been characterized as announcing a doctrine both novel and unusual. In all such cases the object of such appointment is to preserve and hold intact the property intrusted to the receiver, and not to destroy, dismember, or by receiver's sale to dispossess the corporation of its property and franchises."

In *State, ex rel. Merriam,* v. *Ross,* supra, the supreme court of Missouri, said:

"That a court of equity has no inherent power, except in some few cases of particular jurisdiction, to appoint a receiver, except as an incident to and in a suit pending, has hitherto, with the exception of the *Wabash Case* (C. C.; 29 Fed. 618), been a universally-accepted

doctrine; and outside of that case the doctrine that a court of equity, without statutory authority, has jurisdiction, upon the application of an insolvent corporation, to take charge of and administer its affairs through a receiver, not only has no support, but whenever suggested has been repudiated. The following are a few of the many authorities that might be cited in support of these positions"—citing *Jones* v. *Bank of Leadville,* supra; *French Bank Case,* supra; *Neall* v. *Hill,* supra; *Smith* v. *Los Angeles Super. Ct.* (Cal.), 32 Pac., 322; *Hugh* v. *McRae,* Chase, 466, Fed. Cas. No. 6840; *People* v. *St. Clair Cir. Judge,* 31 Mich., 456; *Kimball* v. *Goodburn,* 32 Mich., 11; *French* v. *Gifford,* 30 Iowa, 160; *Whitehead* v. *Wooten,* 43 Miss., 523; *Ex parte Whitfield,* 2 Atk., 315; Wait, Ins. Corp., sec. 183; Gluck & B., Receivers, sec. 27.

The nature of the Wabash case is thus stated in the opinion just quoted from in an excerpt from *Central Trust Co.* v. *Wabash, St. L. & P. R. Co.* (C. C.), 29 Fed., 618, wherein Treat, J., states the nature and origin of the proceeding as follows:

"In order that this matter may not be misunderstood, for it is important in its vast reaching consequences, it should be stated that it was not an application by a mortgagee to foreclose. It was an application by the corporation itself, concerning which a great deal of comment has been made elsewhere. The application was originally made to myself in this circuit, which is limited in extent. I hesitated. I found that Judge

Shipman, a very learned and able judge, had gone over *in extenso* that class of thought. After further consideration with respect thereto, I reached the conclusion that his views were correct, to wit: 'Here is a vast system, extending through many States and many judicial districts. A default it was certain would have been made in a few days. What should be done? The interests of all concerned required that some judicial action should be had for conservation of these interests—stockholders, bondholders, creditors at large,' etc. And after patient thought, I reached the conclusion that Brother Shipman was right."

The cases of *Miner* v. *Belle Isle Ice Co.* (Mich.), 53 N. W., 218, 17 L. R. A., 412; *State, ex rel.,* v. *Second Judicial Dist. Ct.* (Mont.), 39 Pac., 316, 27 L. R. A., 392, 48 Am. St. Rep., 682; *Columbia Athletic Club* v. *State, ex rel.* (Ind.), 40 N. E., 914, 28 L. R. A., 727, 52 Am. St. Rep., 407; and *Supreme Sitting of the Order of Iron Hall* v. *Baker* (Ind.), 33 N. E., 1128, 20 L. R. A., 210, have been referred to as falling within the exception.

We hardly think, however, that all of these cases can be so classed. The first was a case where a court of equity assumed jurisdiction to wind up a corporation at the suit of a minority stockholder, and, as incidental thereto, to appoint a receiver, with an order for an accounting, where the corporation had utterly failed of its purpose because of fraudulent mismanagement and misappropriation of its funds in the interest of one who

owned a majority of the stock, some of which was held by directors who were "dummies" under his control. The chief question discussed was whether courts of equity possessed the power to wind up a corporation in the absence of statutory authority, and it was held that the power existed under the facts stated.

The second case cited is nearer the point. The proposition announced in that case was that a receiver of a corporation might be appointed on the application of minority stockholders, pending the investigation of charges of outrageous frauds on the part of the majority stockholders and managers in a suit for an injunction against the negotiation of enforced or fraudulent obligations created by them, and for other relief, although the latter did not extend to the winding up of the corporation. Distinguishing this case from the case of The French Bank and kindred cases cited supra, the court said:

"In the California case an important element of the decision, as it appears, was that the appointment of the receiver acted as a dissolution of the corporation. In the case at bar no such result is intended by the order appointing the receiver, or is accomplished by that order. It is true that the complainant in the case in the district court asks for a dissolution of the corporation, but whether such relief may be granted in that action is not now before us for review. The complainant also asks for another relief, as set forth in the statement, namely, that the negotiation of the notes

described be restrained, that the foreclosure of the mortgage be prohibited, and that the notes and mortgage be declared null and void. While the determination of these matters is pending in the action, the receiver is to act. His appointment is *pendente.lite* only, and he is authorized to do only those acts which are peculiarly *pendente lite*. . . . The receiver is not to wind up the affairs of the corporation under his appointment. He-is simply to manage the affairs of the same while charges of the most outrageous frauds by the managers and controllers of the corporation are being investigated in the trial of the action."

In *Columbian Athletic Club* v. *State, ex rel.,* it appears that a bill was filed for the dissolution of a corporation on the ground that it had forfeited its franchise, and for an injunction to restrain in the meantime the exercise of the franchises claimed, and for a receiver to take charge of the property until the further order of the court. As a ground for the appointment of the receiver it was alleged that, unless a receiver should be appointed, the defendant below, the athletic club, which had been unlawfully promoting prize fights, would falsely and fraudulently assign its rights and property to certain coconspirators so that prize fighting and other unlawful acts might be still conducted, notwithstanding the order of the court granting the injunction. Concerning the receivership which was granted in the court below, and which action was made the subject of attack in the supreme court, the latter court said:

"If equity may so interpose, certainly it may make its interposition effective. As shown by the information, the injunction if issued would not, of itself, have been sufficient to restrain the nuisance without the aid of the receivership. But equitable remedies must be complete. The arm of equity is not shortened, but will reach out to secure full right in the premises. The receivership being therefore necessary in order to secure the full effect of the injunction, equity will not refrain from the appointment of a receiver for such purpose. The receivership in this case is not necessarily for the sequestration and sale of the property, but only to take charge of the same until the further order of the court, and in aid of the injunction."

The case of *Supreme Sitting of the Order of Iron Hall* v. *Baker* went off on a construction of an Indiana statute, and need not be further referred to. There is, however, a valuable note (20 L. R. A., 210-214) appended to this case, containing a large collection of authorities. In this note the annotator recognizes the prevailing doctrine as above stated, but cites certain exceptions thereto, as follows, viz.: That the appointment of a receiver may be made the main purpose of an action when a corporation ceases to exist, or abandons its business, and neglects to elect its officers, and there is no one to administer or care for its effects (citing *Smith* v. *Danzig,* 64 How. Prac., 320; *Lawrence* v. *Greenwich F. Ins. Co.,* 1 Paige, 587; *Crumlish's Adm'r* v. *Shenandoah Valley R. Co.,* 28 W. Va., 623; *Finney* v. *Bennett,* 27 Grat.,

365; *Buck* v. *Piedmont & A. L. Ins. Co.* [C. C.], 4 Hughes, 415, 4 Fed., 849; *Stark* v. *Burke*, 5 La. Ann., 740; *St. Louis & S. Coal & Min. Co.* v. *Edwards*, 103 Ill., 472; *Consolidated Tank Line Co.* v. *Kansas City Varnish Co.* [C. C.], 43 Fed., 204); or where there is such a dispute among the members of a governing body as prevents the affairs being carried on properly (citing *Featherstone* v. *Cooke*, L. R., 16 Eq., 298; *Trade Auxiliary Co.* v. *Vickers*, L. R., 16 Eq., 303; *Shepherd* v. *Oxenford* 1 Kay & J., 491); or for the protection of creditors where there is danger of irreparable loss, and a receiver is necessary to protect their rights (citing *Wayne Pike Co.* v. *Hammons*, 129 Ind., 368, 27 N. E., 487; *Conro* v. *Gray*, 4 How. Prac., 166; *Sage* v. *Memphis & L. R. R. Co.*, 125 U. S., 361, 8 Sup. Ct., 887, 31 L. Ed., 694; *Kennedy* v. *St. Paul & P. R. Co.*, 2 Dill., 448, Fed. Cas. No. 7,706).

It was at an early day held in this State that a court of chancery had power to appoint a receiver until administration could be granted, where the right of administration was in litigation, or other impediment existed. *Smiley* v. *Bell*, Mart. & Y., 378, 380, 17 Am. Dec., 813. It has also been held that pending litigation over the probate of a will, and during the interval before an executor or administrator is appointed, a court of equity may appoint a receiver of personal property and of the rents and profits of the realty, where there is danger of loss, misuse, or misapplication. 23 Am. & Eng. Ency. of Law (2d Ed.), p. 1015, and cases cited;

or for the estate of an infant when there is no guardian or trustee (Id., p. 1016) ; or for the estate of an idiot or lunatic, pending the return or decision upon the inquisition of lunacy (Id.).

Thus it appears that, while there are some exceptions, both as respects corporations and the estate of private individuals, to the rule that the appointment of a receiver in equity is merely auxiliary to a pending litigation, and that such action may occasionally be the object of the suit itself, and that as to corporations the power may, under some peculiar states of fact, be invoked in behalf of creditors, yet such creditors must generally be judgment or lien creditors (*Wallace* v. *Pierce-Wallace Pub. Co.* (Iowa), 70 N. W., 216, 38 L. R. A., 122, 63 Am. St. Rep., 389; *Union Mut. L. Ins. Co.* v. *Union Mills Plaster Co.* (C. C.), 37 Fed., 286, 3 L. R. A., 90, 94; 5 Thomps., Corp., sec. 6839), or at least creditors by contract (5 Thompson on Corp., sec. 6840; 2 Morawetz, Corp., secs. 797, 860). We know of no authority, and have not been able to discover any, in which the power has been invoked in behalf of persons suing in tort, to the end that the property of a corporation may be held and managed by a receiver in a court of chancery to await the decision of such actions to prevent waste of the corporate property in the meantime, with a view to having it ready to turn over in satisfaction of such judgments as may be obtained in such action at law. Nor do we think, on principle, that the power of the court to appoint receivers should be or could be directed to such

Slover v. Coal Co.

use. And it is certainly true that the danger of waste would have to be made to appear very clearly, and shown to be imminent, before the court would in any case, in behalf of contract creditors even, be justified in taking the management of a presently solvent, going, concern out of the hands of the directors and managers chosen by its stockholders, and in placing it in the control of a receiver of the court.

For the reasons stated, we are of the opinion that the first and second grounds of demurrer are well taken, and that the court of chancery appeals acted correctly in dismissing the bill. The decree of that court is accordingly affirmed.